BERNARD G. O'LEARY *et al.*, Plaintiffs-Appellants, *v.* TRAMMELL CROW *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 77-366

Opinion filed May 10, 1978.

Marks, Katz, Walker & Blatt, of Chicago (Donald L. Johnson, of counsel), for appellants.

George V. Bobrinskoy, Jr., and Kenneth J. Jurek, both of Chicago (Mayer, Brown & Platt, of counsel), for appellees.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiffs, a partnership of three partners and numerous trustees for 30 family trusts doing business as Bennett & Kahnweiler Associates, brought an action to recover damages in an amount equal to a commission or brokerage fee allegedly due them in connection with a real

estate transaction between the Trammell Crow Company and Holleb & Company. The defendants' motion to strike and dismiss was denied. Following discovery, the court granted the defendants' motion for summary judgment. The plaintiffs appeal from that order, contending that it was error for the trial court to enter summary judgment where there were genuine issues of material fact.

The plaintiffs, Bennett & Kahnweiler Associates, are licensed real estate brokers specializing in the brokerage and development of industrial and commercial real estate. Trammell Crow Company owns real estate for commercial development in various locations throughout the Chicago area. The defendants, Trammel Crow and Allan Hamilton, solicit tenants for properties owned by Trammel Crow Company; Hamilton is the Chicago representative of Trammel Crow Company. Holleb & Company is a family owned and operated wholesale grocery business which has three divisions.

In the late 1950's, the Holleb firm discussed the relocation and consolidation of its business operations into one location and had from time to time reviewed its real estate requirements with Louis Kahnweiler of Bennett & Kahnweiler. In the late 1960's, this effort to consolidate was intensified. Sometime prior to October 1969, Bennett & Kahnweiler, on a nonexclusive basis, began a search for property sites in the Chicago area which might be suitable for Holleb & Company's relocation. It was at this time that Bernard O'Leary, one of the plaintiffs, became involved in the Hollebs' search for a new location. During this time, O'Leary worked principally with Bert Holleb, president of the *Oh Boy* Division and a director of Holleb & Company. O'Leary would telephone Bert Holleb whenever he learned of newly available property which might be suitable for the Hollebs' purposes, and Holleb would contact O'Leary whenever he came across anything, asking O'Leary to check it out. During the period from 1969 to 1972, the Hollebs constantly reviewed their needs and revised their requirements. By the fall of 1972, the Hollebs had decided that they wanted to relocate to the northwest suburbs, and were concentrating their efforts in that area. One of the parcels of land inspected on December 20, 1972 was the "Clearing" property in Bensenville. Since the Hollebs expressed interest in the "Clearing" property, O'Leary contacted Clearing and was told that there were no plans to develop the property. However, at that very time, Clearing was apparently negotiating a deal with the Trammell Crow Company through Allan Hamilton to sell the property to the Trammell Crow Company. O'Leary and the Hollebs were not aware of these discussions.

While the first contact between O'Leary and the defendants concerning Holleb & Company came in January 1973, the Trammell Crow Company was aware of the Hollebs' desire to relocate as early as May 1970.

Trammell Crow Company business records reflect attempts by John Wauterlek, a representative of Trammell Crow Company to negotiate a deal with Holleb & Company for a new place of business. Wauterlek spoke with Neil Holleb by phone on May 25, 1970, and discussed relocation plans. Subsequently, on May 27, 1970, and October 21, 1971, Wauterlek wrote to Neil Holleb and on November 19, 1971, to Bert Holleb, regarding various sites as possibilities. However, these overtures were unsuccessful and Wauterlek's communications with the Hollebs ceased in 1972. O'Leary admitted that Neil Holleb had mentioned to him that he had met with someone from Trammell Crow "possibly several years prior" to 1973.

In early January 1973, O'Leary called Allan Hamilton of Trammell Crow to arrange a meeting to discuss the Hollebs' relocation plans. On January 11, 1973, O'Leary, Bert Holleb, and Allan Hamilton met at Hamilton's office, principally to discuss the Hollebs' interest in some property in Elk Grove Village owned by the Crow Company (the "Crow property"). At that meeting, the parties generally reviewed the purpose of the meeting: who the Hollebs were, why and what they were trying to do, why they might be interested in the Crow property, how much land they thought they would require, what other properties had been inspected, how the Hollebs had decided to focus on the area near O'Hare International Airport. O'Leary indicated to Hamilton that the Hollebs were giving serious consideration to a parcel of land in Elk Grove known as "the Goodyear parcel." O'Leary also mentioned that he had shown the Mohawk Country Club and a "Klefstad" property to the Hollebs and may have mentioned the "Clearing" property, but did not discuss the "Clearing" property because the Clearing owners had told him they had no plans for development. Allan Hamilton suggested with regard to at least three of the properties mentioned, including the Goodyear property and property in the southwest suburban area owned by the Santa Fe Railroad, that Crow could purchase the property and then build-to-suit and lease it back to the Hollebs. However, the Hollebs preferred to own their property. Allan Hamilton did not mention that he had met with representatives of the Clearing owners three days before, on January 8, 1973, and had discussed terms for purchase of that property with them. Allan Hamilton showed O'Leary and the Hollebs plats of the property he had available, but apparently Bert Holleb found little that was suitable for their needs.

On the following day, January 12, 1973, O'Leary spoke with Allan Hamilton regarding the availability of the Santa Fe property and was told that the railroad was not interested in selling to the Hollebs. O'Leary had no further contact with Allan Hamilton or the Trammell Crow Company until more than five months later.

After the meeting with Allan Hamilton, the Hollebs decided that the Goodyear property was the parcel of land they wanted to acquire, and all of O'Leary's work for them centered on negotiations aimed at working out a deal for that property. At the end of February 1973, the Hollebs entered into a contract to purchase the Goodyear property, subject to their approval of the results of soil tests.

On April 5, 1973, while the Hollebs were still awaiting the results of the soil tests on the Goodyear property, Bert Hamilton of the brokerage firm of Nicholson, Porter & List, telephoned Robert Holleb, president of the Holleb Company, regarding the availability of the property the Hollebs were then occupying and inquiring as to when they would be vacating that property. Robert Holleb told Bert Hamilton that he was uncertain whether they would be leaving their present location due to the possibility of certain problems because of the soil condition of the property they had contracted to acquire. Bert Hamilton asked if the Hollebs were considering alternate sites, and when Holleb answered affirmatively, Hamilton told him he might have something for him and would get back to him. Later that afternoon, Bert Hamilton again spoke with Robert Holleb and advised him that the "Clearing" property in Bensenville, which by this time had been acquired by the Trammell Crow Company, was available. The Hollebs expressed interest in that property, and later that month, Bert Hamilton brought Neil and Robert Holleb to meet with Allan Hamilton to discuss the "Clearing" property in Bensenville which the Trammell Crow Company had acquired. Discussions and negotiations continued throughout May and into June regarding that property. During this time, the Hollebs were still deciding whether or not to proceed with the Goodyear deal. The soil tests had shown a large area of peat in the ground which would prove costly to remove and refill in order to provide a suitable base for the proposed buildings and would have justified a cancellation of the contract by Holleb & Company under a contingency clause. Finally, on June 20, 1973, the Hollebs informed O'Leary's firm, Bennett & Kahnweiler, that they were not going through with the Goodyear deal.

On June 22, 1973, O'Leary spoke with Bert Holleb to discuss suitable alternatives to the Goodyear property. Holleb mentioned that Neil Holleb was negotiating with Allan Hamilton about developing a facility on the "Clearing" property in Bensenville. On June 26, 1973, O'Leary had a telephone conversation with Allan Hamilton during which he learned that the Hollebs had been brought back to the Trammell Crow Company by Bert Hamilton of Nicholson, Porter & List.

In April 1974, the Hollebs entered into a 30-year lease with Trammell Crow Company for a portion of the "Clearing" property in Bensenville.

The plaintiffs filed this action alleging that they had brought the Holleb

deal to the defendants, that the defendant, Allan Hamilton, made implied promises to O'Leary that he recognized Holleb & Company as O'Leary's prospect, that it was custom and practice and so understood by Allan Hamilton that if a deal was made with Holleb & Company, O'Leary would be entitled to a fee for having brought the prospect to the developers, and that since O'Leary had introduced the Hollebs to the property which they ultimately leased from the Trammell Crow Company, the plaintiffs were entitled to a commission.

■■■ The general rule in Illinois is that before a broker may recover a commission allegedly due him he must prove that he has sold the property in question or procured a buyer ready, willing and able to purchase at the stipulated terms, that the sale was the proximate result of the broker's efforts, or that he was the procuring cause of the sale. (*Camp v. Hollis* (1947), 332 Ill. App. 60, 66, 74 N.E.2d 31; *Waghorne v. Hogstrom* (1956), 11 Ill. App. 2d 345, 137 N.E.2d 497 (abstract); *Modern Tackle Co. v. Bradley Industries, Inc.* (1973), 11 Ill. App. 3d 502, 297 N.E.2d 688; *Mammen v. Snodgrass* (1957), 13 Ill. App. 2d 538, 142 N.E.2d 791.) As the court stated in *McGuire v. Carlson* (1895), 61 Ill. App. 295, 299-300:

> "[A]n owner may employ two or more brokers; in such case it is the broker who is the efficient cause of the sale who is entitled to commissions; and this right is not affected by the fact that such broker sells to one whose attention to the property had before been called by another broker. It is not the broker who first speaks of the property, but he who is the procuring cause of the sale, be he the first or second who engaged the attention of the purchaser. [Citations.]"

■■ In the case at bar, it is undisputed that Trammell Crow Company was aware of the Hollebs' desire to relocate in May 1970. The January 1973 meeting arranged by O'Leary at which he introduced Bert Holleb to Allan Hamilton did not involve any new disclosure of interest. While O'Leary may have mentioned that he had shown the "Clearing" property to the Hollebs, there is no question that the "Clearing" property was not discussed at that meeting. Following that meeting and a phone call the next day, there was no further contact between O'Leary and the defendants. O'Leary concentrated his efforts on the Goodyear property, with the result that the Hollebs entered into a contract to purchase that property. It was only after Bert Hamilton, another broker, learned that the Goodyear deal was nearing collapse that the Hollebs and Trammell Crow Company began negotiations which eventually led to their leasing of part of the "Clearing" property. Any question as to whether the services performed by the plaintiffs entitled them to a commission as the "procuring cause" of the transaction between the Hollebs and Trammell Crow Company are resolved by the subsequent intervention of the

second broker, Bert Hamilton. Where there is an intervening instrumentality such as successful negotiations by another broker, a broker will not be entitled to a commission merely because of his initial introduction of the property to the purchaser. (*Moehling v. Brickman* (1968), 98 Ill. App. 2d 156, 163, 240 N.E.2d 210.) O'Leary had concluded his contact with the defendants and focused his efforts on the Goodyear deal. The deal eventually worked out between Holleb & Company and the defendants was begun upon an entirely independent solicitation. There is no question that it was the action of Bert Hamilton in bringing a prospect already known to Trammell Crow Company through the meeting with O'Leary and Bert Holleb in January 1973, and through the dealings of its own John Wauterlek from 1970-1972, that led to the consummation of the transaction involving the "Clearing" property. See *Mammen v. Snodgrass* (1957), 13 Ill. App. 2d 538, 541-42, 142 N.E.2d 791.

■■ The plaintiffs also allege the existence of implied promises made by the defendant, Allan Hamilton, to O'Leary and contend that they should be allowed to present evidence of custom and practice to a jury on the issue rather than have it decided on motion for summary judgment. The plaintiffs argue that Allan Hamilton promised by implication that he recognized Holleb & Company as O'Leary's prospect and that it was custom and practice and so understood by Hamilton that if and when a deal was made with Holleb & Company, O'Leary would be entitled to a fee for having brought the prospect to the developers, and that he also promised by implication that he would act in such a way as would not deprive the plaintiffs of any commissions they might earn on a deal. This argument is without effect unless we infer that when Allan Hamilton agreed to O'Leary's request for a meeting with Bert Holleb, that acquiescence gave rise to a contract of brokerage on behalf of Trammell Crow Company. There are no facts alleged which show that when O'Leary was in Allan Hamilton's office he sought or received any express indication of an acceptance of his implied offer of brokerage; nor do the facts provide any basis for the assertion that the implied promises allegedly made by Allan Hamilton gave rise to a brokerage agreement by implication. While an express contract is unnecessary, more has to be shown than appears here to establish the existence of an implied contract. We think that reasonable men could draw but one conclusion from the evidence and any inferences therefrom to which the plaintiffs are entitled, and that is that the facts and circumstances are insufficient to imply anything more than an agreement by the defendants to meet and discuss the Hollebs' needs and the possibility of Trammell Crow Company being able to satisfy those needs. That meeting proved fruitless, and the

subsequent transaction between Holleb & Company and the defendants was consummated independently of the plaintiffs.

Since we find no genuine issue of material fact exists, we find no error in the decision of the trial court to grant summary judgment in favor of the defendants.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA and McGILLICUDDY, JJ., concur.