WILMETTE REAL ESTATE AND MANAGEMENT COMPANY, Intervening Plaintiff-Appellant, v. JUNE E. LUVISI *et al.*, Plaintiffs-Appellees (Robert E. Jove *et al.*, Defendants-Appellees).

First District (5th Division) No. 87—1662

Opinion filed June 24, 1988.

Claire Tolf Hugi, of Chicago, for appellant.

Michael Weininger and Barry A. Erlich, both of Katz, Randall & Weinberg, and Thomas W. Murphy, of Johnson, Cusack & Bell, Ltd., both of Chicago, for appellees.

JUSTICE SULLIVAN delivered the opinion of the court:

This appeal is from the dismissal of count I and summary judgment on count II of a complaint seeking payment of a cooperating broker's commission from the sale of certain real estate.

The facts are largely undisputed. On June 4, 1985, plaintiffs, the Luvisis, filed a complaint against defendants, the Joves, for an accounting and other relief in connection with the ownership and management of five parcels of property, including an apartment building on Ridge Avenue in Evanston, Illinois, which had been placed in trust for the parties by their parents, George and Francis Jove. On July 22, 1986, the trial court ordered that the Ridge property be listed for sale at a price at least 10% more than the appraised value, which was $1 million, and appointed Larry Starkman and Associates (Starkman) as the exclusive broker for the sale.

It appears that Starkman listed the property with two multiple listing services, one of which was the North Shore Multiple Listing

Service, and that the listing agreement provided for payment of a 2½% commission to a cooperating broker who secured a purchaser. The property was brought to the attention of Cameel Halim, the owner and president of intervening plaintiff, Wilmette Real Estate and Management Co. (Wilmette), by Anthony Davidson, who worked as a salesperson for the real estate brokerage firm of Hallmark & Johnson, which was acquired by Starkman in July 1986. According to Halim's affidavit, he informed Davidson of his intent to use Wilmette as his broker if he purchased the property and was told by Davidson that Wilmette would then receive the 2½% commission.

On September 8, the Joves petitioned the court to approve the sale of the property to the individual—Michael Aufrecht—whose offer was the highest of the three received to that date. However, on that same day, June Luvisi submitted an offer higher than Aufrecht's and, on September 10, petitioned the court for approval of the sale to her. On September 16, Wilmette submitted a sealed-bid offer, the amount of which is unknown because, for reasons not appearing in the record, the bid was never opened. The next day, Robert Jove tendered an offer for an amount higher than Luvisi's and also filed a motion for approval of the sale to him. The motions were continued until October 1, 1986, by which date a total of nine offers had been received. Of those, five—including those made by Luvisi and Jove—met or exceeded the minimum price set by the court, three were for lesser amounts and one, Wilmette's, was, as noted above, for an unknown amount.

At the proceedings on October 1, the trial court entered an order agreed to by the parties providing for an orderly final sale of the property for the highest bid above the amount already offered by Jove by means of a public auction. The order further provided that the sale would be for cash and subject to those and only those terms contained in a court-approved real estate sales contract to be made available for inspection to all interested persons. Pursuant to the court's order, notice of the sale was placed in two local newspapers throughout the following month. The auction was conducted in the trial court's conference room on November 7. Present as bidders were Jove, Luvisi, Aufrecht and Halim, who was accompanied by his attorney, and two individuals who had not previously submitted offers for the property. Prior to commencement of the bidding, the attorney conducting the auction read the terms of the sale as set forth in the advertised notice, circulated copies of the approved sales contract and invited questions from the participants. Bidding was conducted in a round-table manner and continued until all bidders submitted their final offers. Halim emerged as the successful bidder and immediately thereafter

he and the parties executed the sales contract, following which an order was entered confirming the sale.

On November 13, 1986, the trial court entered an agreed order providing for Starkman to "receive as compensation, in lieu of an hourly rate, for assisting the parties at the auction *** and also in lieu of any other compensation for its sales efforts *** the amount of $42,750, payable at the closing of the sale of the property." On November 18, Wilmette was granted leave to file a two-count intervening complaint for payment of $35,635, an amount equalling 2½% of the purchase price, plus costs and interest for acting as the "selling broker" in the transaction.

In claiming entitlement thereto, Wilmette alleged in count I that it was Halim's broker and the procuring cause of the sale. Count II, which was directed only against Starkman, alleged that on several occasions prior to the sale, Halim had been promised by Davidson that if Halim purchased the property, Wilmette would receive the 2½% commission and that it, and Halim, had relied on those promises in setting the final amount bid for the property.

The Luvisis and Joves filed motions to dismiss, asserting lack of privity of contract and that the provision for payment of a broker's commission had been clearly stricken from the sales contract executed by Halim. Starkman filed a motion for summary judgment on the grounds that because the property was sold by way of a court-ordered public auction, the terms of the listing agreement did not apply; that no broker's commission was provided for in the notice of the sale or in the real estate contract, the commission provision having been clearly lined out of the contract; and that since Halim had executed a fully integrated written contract evidence concerning other, prior agreements and/or oral representations was barred by the parol evidence rule. Following argument by counsel at a hearing on April 13, 1987, the court granted the motions to dismiss and for summary judgment, finding that because the property was not sold pursuant to the real estate listing agreement Wilmette was not entitled to a broker's commission. This appeal followed.

Opinion

Wilmette contends that the trial court erred in granting the motions to dismiss and for summary judgment because it could have prevailed at a trial on one or more of several theories. Wilmette maintains that in this case the trier of fact could have found that (1) the auction did not obviate the contractual obligations imposed on the Luvisis and Joves (hereinafter collectively referred to as the sellers)

and/or Starkman by the listing agreement to pay the selling broker a 2½% commission; and that (2) it was entitled to that commission (a) as the procuring broker of the ultimate purchaser and/or (b) on either a *quantum meruit* or a quasi-contract basis.

As to count I, the sellers respond that they are not obligated to pay Wilmette any commission because (1) there was neither an express nor an implied contract between them and Wilmette for any commission; (2) Wilmette was not the procuring cause of the sale; (3) the property was sold pursuant to a court-approved sales contract from which the provision for a broker's commission was clearly lined out, and (4) Wilmette is estopped by the actions of its president, Halim, in failing to question that deletion or make any claim for a commission at the time he, in the presence of his attorney, executed the contract.

■■ A broker who brings an action to recover a commission must set forth acts showing his entitlement thereto. The right to compensation for services must be based on the broker's employment to render services for which the compensation is claimed and he must have been employed by the person from whom the compensation is sought. (*Arthur Rubloff & Co. v. Drovers National Bank* (1980), 80 Ill. App. 3d 867, 400 N.E.2d 614.) Thus, while a broker who has procured a sale as a cooperating broker may be entitled to recover a commission from the exclusive listing broker, unless there is an express or implied contract between him and the seller, the cooperating broker has no right to recover directly from the seller (*Panorama of Homes, Inc. v. Catholic Foreign Mission Society, Inc.* (1980), 84 Ill. App. 3d 142, 404 N.E.2d 1104), and absent such an agreement an action for a broker's commission or fee may be summarily dismissed (*Plastics & Equipment Sales Co. v. DeSoto, Inc.* (1980), 91 Ill. App. 3d 1011, 415 N.E.2d 492).

■■ In this case, Starkman was appointed by the court to be the exclusive broker to sell the property at issue after more than a year of acrimonious litigation between the parties and an inability by them to reach agreement even on the decision of which broker to engage to market the property. There is no allegation nor any evidence of any written or oral agreement between Wilmette and the sellers regarding the sale of the property. Indeed, there is nothing in the record to indicate or even suggest that there was any communication whatsoever between Wilmette and the sellers or that they accepted or acknowledged Wilmette to be acting as their broker at any time. Absent any such agreement or conduct, we see no basis to support Wilmette's claim that it is entitled to receipt of a broker's commission

from the sellers, and for that reason alone, we believe that count I was properly dismissed.

■ Considering Wilmette's arguments as to count II against Starkman, we note initially that before a broker may recover a commission allegedly due him, he must prove that he has sold the property in question or procured a buyer ready, willing and able to purchase at the stipulated terms within the time of his authority (*Solomon v. Baron* (1984), 123 Ill. App. 3d 255, 462 N.E.2d 756; *O'Leary v. Crow* (1978), 60 Ill. App. 3d 135, 376 N.E.2d 392). It is not enough that the broker was the first to bring the property to the attention of the ultimate purchaser; rather, it must be shown that the sale was the proximate result of his efforts. (*O'Leary v. Crow*, 60 Ill. App. 3d 135, 376 N.E.2d 392; *Thorne v. Elmore* (1979), 79 Ill. App. 3d 333, 398 N.E.2d 837.) Therefore, where there is an intervening instrumentality, such as new or independent negotiations, a broker will not be entitled to the commission merely because of his initial introduction of the ultimate purchaser to the property. *O'Leary v. Crow* (1978), 60 Ill. App. 3d 135, 376 N.E.2d 392.

The instant case presents a somewhat unusual situation in that while Wilmette argues that it procured the ultimate purchaser—Halim—in actuality, it was Halim who, as owner and president of Wilmette, chose to "use" Wilmette as his broker after learning of the availability of the property from one of Starkman's salespersons—Davidson. Aside from Wilmette's allegations that Halim identified it as his broker to Davidson, there is nothing in the record showing the nature of Wilmette's role in this transaction or what, if any, efforts it made in connection with Halim's purchase of the property.

■ As noted earlier, during the term of the court-ordered listing agreement, a total of nine offers were made for the property. Of those, five, including the two made by the sellers themselves, met or exceeded the amount set by the court as the minimum sales price and three were offers below the appraised value. The remaining offer, a sealed bid submitted by Wilmette, not Halim, was never opened. There being no way of knowing whether Wilmette's offer (a) met the terms stipulated in the listing agreement and (b) exceeded the others in the amount offered, Wilmette has failed to show that it produced a ready, willing and able purchaser for the property, or that Halim was that purchaser.

■ Moreover, when the parties were unable to agree on a purchaser during the term of the listing, an agreed order was entered for the purpose of resolving the disputes and terminating the litigation by providing for a final sale through a court-ordered and court-super-

vised auction resulting in the execution of a court-approved real estate sales contract. The publicly advertised notice of the auction expressly stated that the sale was subject to the terms of the sales contract from which had been clearly stricken any provision for a broker's commission. The contract was available for inspection both prior to and on the day of the auction, which Halim attended with his attorney. In addition to Halim, Aufrecht, June Luvisi and Robert Jove were at least two other persons who had not submitted bids during the term of the listing agreement. Bidding was conducted in a round-table fashion and concluded only when all bidders declined to bid further. Thus, even assuming *arguendo* that Wilmette otherwise might have had some basis on which to claim entitlement to a commission as a "co-operating broker," the court-ordered auction, held after the expiration of the multiple listing agreement—which had not produced a buyer ready, willing and able to purchase the property on terms agreeable to all of the sellers—was an independent occurrence unrelated to any prior solicitations and negotiations and was the actual cause of the ultimate sale.

■ Finally, we regard Wilmette's argument that it relied on Davidson's alleged oral representations that notwithstanding the auction it would receive one half of the 5% commission as a "cooperating broker" to be disingenuous at best. As already noted, the provision for a broker's commission was clearly lined out of the sales contract which Halim, an experienced real estate broker and investor, and his attorney read prior to Halim's execution of it. In our view, no reasonable trier of fact could have concluded that a man of Halim's experience in real estate negotiations and transactions, or his attorney, would have allowed, without question, the omission of a provision for his own commission from a real estate contract for the purchase of property for an amount close to $1.5 million. See *Thorne v. Elmore* (1979), 79 Ill. App. 3d 333, 398 N.E.2d 837.

Having determined that Wilmette's claims of entitlement to a broker's commission on either a contractual or *quantum meruit* basis are wholly unsupported by the record, we affirm the order of the trial court granting the motion to dismiss count I and the motion for summary judgment on count II of its complaint.

Affirmed.

LORENZ, P.J., and MURRAY, J., concur.