VAN C. ARGIRIS & CO., Plaintiff-Appellant, v. FMC CORPORATION, Defendant-Appellee.

First District (1st Division)   No. 85—1942

Opinion filed June 2, 1986.

Frank K. Heap and W. E. Whittington IV, both of Bell, Boyd & Lloyd, of Chicago, for appellant.

Howard W. Emmerman, of Rudnick & Wolfe, of Chicago, for appellee.

PRESIDING JUSTICE QUINLAN delivered the opinion of the court:

Plaintiff, Van C. Argiris & Co. (Argiris), filed suit against FMC Corp. (FMC), AM International (AMI), and Arthur Rubloff & Co. (Rubloff) seeking a real estate brokerage commission, or alternatively, the value of services rendered in the 1981 sale of the FMC headquarters to AMI. Count I of Argiris' complaint sought a commission on the sale from FMC, contending that FMC contracted to pay such commission to Argiris as the procuring cause of the sale to AMI; count II sought relief in *quantum meruit* against FMC for the reasonable value of services rendered in relation to the sale; count III sought a commission from AMI asserting that AMI as the buyer had also contracted to pay a commission to Argiris in locating new quarters for AMI; count IV sought relief in *quantum meruit* against AMI for the reasonable value of services rendered to AMI in the purchase of the new quarters; and count V was against Rubloff for the commission on the sale alleging the Rubloff had contracted with Argiris as a cooperating broker under Rubloff's exclusive listing with FMC.

After a trial, a jury verdict was returned for the defendants on counts I, III, IV, and V, and for Argiris on count II in the amount of $50,000. In response to a special interrogatory, the jury found that AMI's broker, Joseph Dillon, was the procuring cause of the sale. Thereafter, on FMC's motion, the trial court entered judgment *n.o.v.* as to count II in favor of FMC and against Argiris, on the ground that since Argiris was not the procuring cause of the sale, it could not recover in *quantum meruit*.

Although this appeal was originally brought with respect to all five counts of the complaint, Argiris subsequently moved for and re-

ceived a voluntary dismissal of the appeal with respect to counts I, III, IV, and V. Argiris' present appeal relates solely to the trial court's granting of judgment *n.o.v.* as to count II. Argiris asks this court to reverse the trial court's entry of judgment *n.o.v.* and to reinstate the jury's verdict.

The facts involved in this case are basically as follows. In late 1979, Argiris learned that FMC was considering selling its plant in Itasca and that it intended to select a broker to handle the sale of its property. Argiris decided to enter the competition to become FMC's exclusive broker, and when it learned that a division of AMI was interested in purchasing a larger plant site, Argiris on June 3, 1980, with the permission of the FMC plant manager, took the AMI plant manager on a one-hour tour of the FMC property. Argiris continued to contact the AMI plant manager to obtain an expression of interest in the FMC plant, but without success. Argiris also wrote to FMC stating that AMI was a prospective purchaser, and claimed that on any sale of the FMC property to AMI, Argiris would be entitled to a commission of 6% of the first $50,000 and 5% on any further proceeds.

During the spring of 1980, numerous other real estate brokers as well as Argiris made representations to FMC in an effort to become its exclusive broker for the sale of its property. On July 1, 1980, FMC selected Rubloff as its exclusive broker, and turned over its file to Rubloff regarding the sale of its plant. The file included Argiris' letter to FMC concerning its June 3rd tour of the FMC plant with AMI. Subsequently, on July 3, 1980, Rubloff wrote Argiris to advise Argiris that Rubloff was FMC's exclusive broker, and instructed Argiris that before it would consider Argiris as having "registered" AMI as its prospect, Argiris would have to bring the AMI representative on a tour of the property again. It is undisputed that Argiris never responded to Rubloff's letter, and that Argiris was unsuccessful in its efforts to induce AMI to take a second tour of the FMC plant site. Rubloff wrote to numerous other brokers in the Chicago area offering to cooperate with any broker who had a potential buyer, and indicated if any broker produced a prospect who bought the FMC plant, that broker and Rubloff would divide the commission.

Ultimately, Joseph Dillon, AMI's broker, working with Rubloff, secured the sale of the FMC plant, and thereafter, Rubloff and Dillon split the commission paid by FMC as a result of the sale. Argiris then filed the present suit against FMC, AMI and Rubloff seeking to recover all or part of the commission or compensation for his services.

On appeal to this court, Argiris contends that the trial court erred

in ruling that a broker must be the "procuring cause" of a sale to recover in *quantum meruit*, and that the court improperly relied on *McGuire v. Carlson* (1895), 61 Ill. App. 295, and *O'Leary v. Crow* (1978), 60 Ill. App. 3d 135, 376 N.E.2d 392, in support of its decision. Argiris maintains that *McGuire* and *O'Leary* have no bearing on the issue presently before this court because in both of those cases relief was sought either on an express or implied-in-fact contract basis, and in neither of those cases was a *quantum meruit* claim involved. Thus, Argiris asserts that since it is seeking to recover only on the basis of *quantum meruit*, it need not have been the procuring cause of the sale to recover. We disagree with Argiris' contention, and for the reasons set forth below, we hold that a broker seeking to recover in *quantum meruit* must prove that he was the procuring cause of the sale.

■■■ The term "*quantum meruit*" literally means " 'as much as he deserves.' [Citation.]" (*Nardi & Co. v. Allabastro* (1974), 20 Ill. App. 3d 323, 327, 314 N.E.2d 367.) It is a term that describes a recovery which is based on the reasonable value of services that have been performed. (20 Ill. App. 3d 323, 327, 314 N.E.2d 367.) The theory of recovery in *quantum meruit* is that the defendant has received a benefit which would be unjust for him to retain without paying for it. (*Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc.* (1980), 87 Ill. App. 3d 480, 486, 408 N.E.2d 1069.) Therefore, in order to recover in *quantum meruit*, it is essential that the services performed by the plaintiff must be of some measurable benefit to the defendant. *O'Neil & Santa Claus, Ltd. v. Xtra Value Imports, Inc.* (1977), 51 Ill. App. 3d 11, 15, 365 N.E.2d 316.

■ As it is generally recognized in the real estate profession, brokers earn their living by bringing together willing buyers and willing sellers who agree to an acceptable price. In seeking to accomplish this occupational goal, brokers often engage in numerous activities such as showing properties, making phone calls, and writing letters in an effort to attract prospective buyers and sellers. However, a broker is compensated only when he has presented the seller with a ready, willing and able buyer who will purchase the property on the seller's terms. (See *O'Leary v. Crow* (1978), 60 Ill. App. 3d 135, 376 N.E.2d 392.) In the seminal case of *Sibbaid v. Bethlehem Iron Co.* (1881), 83 N.Y. 378, 383, 38 Am. Rep. 44, the New York Court of Appeals set forth this now generally accepted practice, stating:

> "[A] broker is never entitled to commission for unsuccessful efforts. The risk of failure is wholly his. The reward comes only with his success. That is the plain contract and contemplation

of the parties. The broker may devote his time and labor, and expend his money with ever so much of devotion to the interests of his employer, and yet if he fails, if without effecting an agreement or accomplishing a bargain, \*\*\* he gains no right to commissions. He loses the labor and effort which was staked upon success. And in such event it matters not that after his failure, and the termination of his agency, what he has done proves of use and benefit to the principal. \*\*\* He may have introduced to each other parties who otherwise would never have met; he may have created impressions which, under later and more favorable circumstances, naturally lead to and materially assist in the consummation of a sale; he may have planted the very seeds from which others reap the harvest; but all that gives him no claim."

Accordingly, it is clear that a broker is normally entitled to a commission only when he can demonstrate that he has effected or accomplished the actual sale of the property. Standing alone, the day-to-day activities performed by the broker, such as the making of phone calls and the writing of letters, do not benefit the seller, but rather benefit the broker in his quest to become the procuring cause of the sale. It is only when the broker has procured a buyer who is ready, willing and able to consummate a sale on the seller's terms that the seller has received some measurable benefit as a result of the broker's efforts. By implication, therefore, the broker wishing to recover in *quantum meruit* must prove that he is the procuring cause of the sale to establish the fact that the services rendered were valuable and beneficial to the seller. This requirement that a broker must prove that he is the procuring cause of sale in order to recover in *quantum meruit* is not, as Argiris contends, an imposition of an additional and unnecessary element for recovery under in *quantum meruit*. Rather, it is a logical *sine qua non* to the establishment of the fact that the services rendered were valuable and of benefit to the seller, and thus, it is merely a part of the existing elements required for recovery in *quantum meruit*.

In the instant case, the services rendered by Argiris consisted of introducing the buyer and seller, taking AMI on a one-hour tour of the plant, and writing numerous follow-up letters in an effort to maintain AMI's interest in the property. It is these services that Argiris asserts were valuable and benefitted FMC, and Argiris asserts that it would be unjust for FMC to retain their benefit without paying for them. However, upon application of the above principles, we find that, although the services performed by Argiris might have some value, as

the New York Court of Appeals noted in *Sibbaid*, they clearly were of no benefit in a legal sense to FMC. It is obvious that Argiris' goal in performing these activities was to attract FMC's attention and obtain the award of an exclusive listing with FMC. Where, as here, preliminary services are rendered to gain a business advantage with the expectation of obtaining a hoped-for contract, without any reasonable anticipation on the part of either the plaintiff or the defendant that reimbursement will directly result, quasi-contractual relief is unwarranted. (*Rutledge v. Housing Authority* (1980), 88 Ill. App. 3d 1064, 1069, 441 N.E.2d 82.) FMC has received no benefit from Argiris' efforts because Dillon, not Argiris, was the procuring cause of the sale between FMC and AMI.

■ Argiris has cited *Nardi & Co. v. Allabastro* (1974), 20 Ill. App. 3d 323, 314 N.E.2d 367, in support of its argument that a broker need not be the procuring cause of the sale in order to recover in *quantum meruit*. We find Argiris' reliance on *Nardi* misplaced for the simple reason that, although the broker in *Nardi* recovered from the seller in *quantum meruit*, he did so for the performance of services regarding the financing of the real estate transaction and not for services related to the procurement of a ready, willing and able buyer. Furthermore, there was an express contract there between the parties which provided that the broker would be compensated for whatever services he performed in the event he was not the procuring cause of the sale. In the instant case, there was no such agreement between FMC and Argiris.

The other cases cited by Argiris in support of its argument are single broker cases where the broker allegedly performed services in relation to the sale of real estate and the seller attempted to unjustly withhold payment of the commission. Additionally, our review of these cases indicates that in those instances in which a broker was allowed to recover in *quantum meruit*, the broker was in fact found to be the procuring cause of the sale. (See, *Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc.* (1980), 87 Ill. App. 3d 480, 408 N.E.2d 1069; *Dickerson Realtors, Inc. v. Frewert* (1974), 16 Ill. App. 3d 1060, 307 N.E.2d 445.) In *Bau v. Sobut* (1977), 50 Ill. App. 3d 732, 365 N.E.2d 724, also cited by the plaintiff, the court there did not grant relief in *quantum meruit* because the broker was not in fact the procuring cause of the sale. The court specifically stated that it was unable to find that the seller benefitted from any effort made by the broker with respect to the subsequent sale of the property.

■ We also disagree with Argiris' assertion that *McGuire v. Carlson* (1895), 61 Ill. App. 295, and *O'Leary v. Crow* (1978), 60 Ill.

App. 3d 135, 376 N.E.2d 392, are inapposite to the issue presented here. Like *McGuire* and *O'Leary*, this case is a multiple-broker situation where a commission has been paid and there is now a dispute involving which broker should have recovered the commission. In both *McGuire* and *O'Leary*, the court awarded the commission to the broker who was found to be the procuring cause of the sale. Here, FMC has paid its commission to Rubloff, its exclusive broker, who in turn split the commission with Dillon, the procuring cause of the sale. The law is well settled in Illinois that only one commission will become due when a ready, willing and able purchaser has been found, and the commission will be due only to the broker who can show that he was the procuring cause of the sale. (See *Chicago Title & Trust Co. v. Guild* (1944), 323 Ill. App. 608, 56 N.E.2d 659; *Burns v. Sullivan* (1915), 192 Ill. App. 127.) Clearly, FMC has discharged any duty it had regarding the payment of its commission due as a result of the sale of its property to AMI, and it would be contrary to the well-settled law in this State for this court to do as Argiris requests, and direct FMC to in effect pay a second commission. Furthermore, as stated above, no such payment of a commission is warranted under the law or the facts here.

■ Thus, we hold that in order to recover in *quantum meruit* for the reasonable value of services rendered in relation to the sale of the real estate, a broker must prove that he was the procuring cause of the sale, or as in *Nardi*, that he performed services over and above those of an ordinary real estate broker in attempting to arrange a sale or purchase.

Accordingly, for the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and BUCKLEY, JJ., concur.