PROGRESSIVE REALTY ADVISORS, INC., an Illinois corporation (also known as Progressive Realty Associates, Inc.), Plaintiff,

v.

The GREAT–WEST LIFE ASSURANCE COMPANY, Defendant.

No. 91 C 3401.

United States District Court, N.D. Illinois, E.D.

Dec. 12, 1991.

Memorandum Opinion and Order Feb. 12, 1992.

---

Patrick William Dunne, Nolan, O'Malley & Dunne, Chicago, Ill., for plaintiff.

J. Robert Geiman, Vincent Patrick Reilly, William A. Chittenden, III, Douglas John Varga, Sarah Gaines Grider, Peterson & Ross, Chicago, Ill., for defendant.

### MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Plaintiff Progressive Realty Advisors, Inc. ("Progressive") brought this suit against defendant The Great–West Life Assurance Company ("Great–West"), seeking the recovery of real estate brokerage commissions and the value of services rendered with respect to certain properties owned by the defendant. Progressive claims that it possessed exclusive listing agreements and an independent contractor agreement with Great–West to sell or lease several of Great–West's properties. The plaintiff claims that in several instances the defendant refused to sell the properties to purchasers procured by the plaintiff. The defendant now moves this court, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the complaint for a failure to state a claim for which relief can be granted. For the reasons stated below, the court grants the defendant's motion.

### Background

According to the allegations in the complaint, Great–West is a life insurance company which buys and sells real estate for investment purposes. Of particular interest in this case, Great–West owns several properties commonly described as: 1) 1500 N. Plum Grove Road ("Plum Grove property"), Schaumburg, Illinois, 2) 1200 E. Devon Avenue, Elk Grove Village, Illinois ("Elk Grove property"), 3) 17170 Westview Avenue, South Holland, Illinois ("South Holland property"), and 4) several lots in Woodfield Business Center ("Woodfield Business Center properties").

On December 29, 1987, the defendant entered into a written agreement with

plaintiff Progressive, a real estate brokerage company which sells commercial real estate, giving the plaintiff the exclusive right to sell the Plum Grove Property for the defendant. On or about the same day, the defendant entered into a separate written agreement with the plaintiff which gave Progressive the exclusive right to sell the Elk Grove property for Great–West. Progressive also alleges that it entered into an oral agreement with Great–West on December 29, 1987 which gave Progressive the exclusive right to sell the South Holland property for Great–West. The three agreements provided that the defendant was to refer all inquiries regarding the properties to the plaintiff and the plaintiff was to receive a broker's commission of three percent of the total sale price of the properties sold. Progressive was to act as Great–West's agent during all negotiations regarding these properties.

On or about May 20, 1988, Progressive presented Great–West with an offer from Bankers Trust Company ("Bankers Trust") to buy the Plum Grove property for $2,285,000. On or about the same date, Progressive presented Great–West with a second offer from Bankers Trust to buy the South Holland property for $2,030,000. On or about May 25, 1988, Progressive presented Great–West with a third offer from Bankers Trust to buy the Elk Grove property for $2,400,000. Great–West rejected each offer and told Progressive that it was withdrawing the properties from the market. Great–West subsequently sold the parcels to another party for $1,178,000 less than the total of the three offered prices procured by Progressive. Progressive has not been paid commissions for the sale of these properties.

On December 1, 1982, the defendant and the plaintiff entered into an independent contractor agreement ("the Agreement") whereby Progressive became the full-time marketing director for the defendant's properties in the Woodfield Business Center. Under the Agreement, as with the other agreements, Progressive was to act as Great–West's exclusive agent to sell the defendant's Woodfield Business Center properties and Great–West was to refer all

inquiries regarding the properties to Progressive. Progressive was to receive a real estate commission of six percent.

Progressive alleges that it acquired Montgomery Ward and Company as one of Great–West's prospective tenants for these properties. The parties contemplated building a shopping center, which would include a Montgomery Ward store, on several of Great–West's lots. Progressive also procured an offer to buy several of Great–West's properties in the Woodfield Business Center from John Mathias and Henry Giotis for approximately $3,961,490. Great–West rejected this offer and subsequently sold the properties to First Western Development Corporation for the same price as Mathias and Giotis had offered. The defendant then sold its remaining interest in the Woodfield Business Center to Kasmar Corporation ("Kasmar"). Great–West has refused to pay Progressive commissions for the sales of these properties.

Finally, Great–West allegedly requested that Progressive solicit United Airlines ("United") to lease space in a building to be built by Great–West. The defendant agreed to pay Progressive for its time, expenses, and efforts in this venture. Following negotiations with the plaintiff, United indicated its willingness to lease space from Great–West. Great–West did not pay Progressive for its work on the prospective United lease. As part of its sale of its interest in the Woodfield Business Center, Great–West assigned any rights it might have to a lease with United to Kasmar.

After Great–West refused Progressive's demands for payment, Progressive brought this action to recover its alleged commissions. Progressive claims that it is entitled to broker's fees and real estate commissions, pursuant to its exclusive listing contracts and the independent contractor agreement, for the sales of Great–West's properties. Progressive also claims that it is entitled to recover for the time, expenses, and effort expended in procuring the United lease. The defendant now moves to dismiss this action because the complaint fails to state a claim for which relief can be granted.

*The Motion to Dismiss*

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to attack an action based upon the sufficiency of the pleadings, rather than on the merits of the claim alleged. Fed.R.Civ.P. 12(b)(6). The Supreme Court has stated that a complaint cannot be dismissed for a failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

In order to survive a motion to dismiss, a claimant need not set out the facts of his or he claim in detail. *Id.* at 47, 78 S.Ct. at 102. The plaintiff is only required to provide a "short plain statement of the claim" that gives the defendant fair notice of that claim and the grounds upon which it rests. *Id.* While the complaint must be construed liberally, the modern criteria of notice pleading does not alter the requirement that the plaintiff must allege each essential element required to show violations of the laws claimed. *United States v. Employing Plasterers Ass'n.*, 347 U.S. 186, 189, 74 S.Ct. 452, 454, 98 L.Ed. 618 (1953).

To survive a motion to dismiss in this case, the plaintiff must allege sufficient facts to demonstrate that it is entitled to compensation. *Arthur Rubloff and Company v. Drovers National Bank of Chicago*, 80 Ill.App.3d 867, 36 Ill.Dec. 194, 199, 400 N.E.2d 614, 619 (1980). Defendant Great–West claims that Progressive does not state a valid claim for compensation in Count I because the allegations therein fail to demonstrate that Progressive could produce a ready, willing and able buyer. To establish a prima facie case for compensation, a plaintiff must show:

> that he produced a prospective purchaser who agreed to the sellers' terms, who was continuously willing to purchase during the time of the relevant negotiations and who became able to execute a contract upon the agreed terms at a reasonable time subsequent to the initial negotiations. *Kenilworth Realty Co. v. Sandquist*, 56 Ill.App.3d 78 [13 Ill.Dec.

844, 849], 371 N.E.2d 936, 941 (1977) (citing *Garrett v. Babb*, 24 Ill.App.3d 941, 322 N.E.2d 217 (1975).

The defendant argues that the allegations in Progressive's complaint do not demonstrate that Progressive produced a ready, willing, and able buyer because the offers made by the prospective purchasers of Great–West's properties did not conform to the seller's terms. For example, Bankers Trust offered to pay $2,400,000 for the Elk Grove property, $75,000 less than the listing price of $2,475,000. Similarly, Bankers Trust's offer of $2,285,000 was $45,000 less than the list price for the Plum Grove property. The plaintiff counters that the differences between the offers made and the list prices for the Plum Grove and Elk Grove properties are not significant enough to warrant a dismissal of the case. The plaintiff further argues that its claim is sufficient enough to survive a motion to dismiss because evidence may eventually show that according to industry custom and practice, such minor disparities in prices would constitute compliance with the pertinent listing agreements. Lastly, the plaintiff contends that under the agreements, the defendant could have accepted the offers regardless of whether the offers conform to the listing prices.

Contrary to the plaintiff's contention, defendant Great–West was entitled to reject the offers at issue for a failure to meet his asking price for the properties. The case before this court is similar to the case before the Illinois appellate court in *Kenilworth*. In that case, a prospective purchaser offered to pay first $920,000 and then $935,000 for the property at issue. *Kenilworth Realty Co.*, 56 Ill.App.3d at 78, 13 Ill.Dec. at 848, 371 N.E.2d at 940. Because the price requested by the owner was $950,000, the court determined that the owner had acted within his rights when he rejected the offer. *Id.* The court therefore held that the broker who had procured the offer was not entitled to his commission because he had failed to produce a ready, willing, and able purchaser. *Id.* Similarly, in *Katz v. Brooks*, the court held

that a property owner was not required to accept an offer whose terms would lead to the receipt of $104,000 when the owner listed the property for $110,000. 65 Ill. App.2d 155, 212 N.E.2d 508, 510 (1965). In this case the court also found that the plaintiff broker was not entitled to recover his commission because he had not produced a ready, willing, and able buyer. *Id.*

As already noted, the prospective purchaser in this case, like those in *Kenilworth* and *Katz,* offered the defendant less money than the owner requested in the relevant listing agreements. Therefore, the court finds that because the prospective buyer's offers did not conform to the owner's listing agreements, the plaintiff has failed to establish that it produced a ready, willing, and able buyer. The fact that the differences in price between the offers and the listing prices may not have been significant does not alter the court's conclusion. The differences in the offer and listing agreement prices in *Kenilworth* and *Katz* were only $15,000 and $6,000 respectively. Given that the courts recognized the owners' right to reject the offers in those cases, Great–West certainly was entitled to reject the offers in this case which were $45,000 and $75,000 less than the listing prices for its properties.

The court is also not persuaded by the plaintiff's contention that evidence may show that industry custom and practice recognizes offer prices slightly different from asking prices as complying with the pertinent listing agreement. Even if the differences in the prices in this case should not be considered significant, the plaintiff provides no reason why industry custom and practice should be considered. The cases cited do not refer to industry custom and practice even though the amounts at issue certainly were less significant than the amount in this case. *See Kenilworth Realty Co.,* 56 Ill.App.3d 78, 13 Ill.Dec. 844, 371 N.E.2d 936; *Katz,* 65 Ill.App.2d 155, 212 N.E.2d 508. Moreover, the defendant properly asserts that the plaintiff has failed to allege that it procured a ready, willing, and able buyer because while the listing agreement does provide that Great–West could have accepted the offers any-way, the complaint clearly alleges that Great–West rejected the offers. *See* Complaint at 7.

The defendant also properly contends that the plaintiff has failed to demonstrate that it was entitled to recover the commissions at issue because the buyer Progressive procured did not actually agree to purchase the properties. The Letters of Intent signed by Bankers Trust, the prospective buyer in this case, each clearly stated: "This Letter is not intended to be a binding commitment with respect to the proposed sale and purchase." *See* Complaint, Exhibits C, D. Such unambiguous statements clearly do not comport with the requirement that the prospective purchaser "[be] continuously willing to purchase during the time of the relevant negotiations ..." *Kenilworth,* 56 Ill.App.3d at 78, 13 Ill.Dec. at 849, 371 N.E.2d at 941.

In addition, Bankers Trust's Letters of Intent do not demonstrate that the prospective purchaser was ready, willing, and able to buy because they contained contingencies. Paragraph 13 of each Letter of Intent specifically states that the offers were contingent upon satisfactory site inspections, evidence of satisfactory soil test results, and reviews and approvals of all final or as-built plans regarding the properties. *See* Exhibits C, D. It is a well recognized principle that "where the sales contract is contingent, the broker's right to his commission is subject to the same contingency." *United Investors, Inc. v. Tsotsos,* 132 Ill.App.3d 175, 87 Ill.Dec. 439, 442, 477 N.E.2d 40, 43 (1985); *see also Telander v. Posejpal,* 94 Ill.App.3d 616, 49 Ill.Dec. 590, 418 N.E.2d 444 (1981); *Nelson v. Bolton,* 72 Ill.App.3d 519, 29 Ill.Dec. 23, 391 N.E.2d 182 (1979). In the instant case, Progressive's right to recover its broker's commissions in this case is contingent upon the fulfillment of the contingencies in the pertinent Letters of Intent. Since the plaintiff has not alleged that such contingencies were fulfilled, the plaintiff fails to adequately demonstrate that it has produced the requisite ready, willing and able buyer for the Plum Grove and Elk Grove properties.

■ The defendant also argues that the claim in Count I should be dismissed with respect to the South Holland property. The defendant contends that the alleged oral exclusive agency agreement between Great–West and Progressive for the sale of this property is invalid under Illinois law. The plaintiff counters that Illinois courts have recognized such oral agreements.

Section 450.70 of the Illinois Administrative Code requires that listing agreements, among other things, be in writing.[1] Illinois courts have recognized that "... administrative rules and regulations have the force and effect which govern the construction of statutes." *Northern Illinois Automobile Wreckers, Etc. v. Dixon*, 75 Ill.2d 53, 25 Ill.Dec. 664, 667, 387 N.E.2d 320, 323 (1979); *DeGrazio v. Civil Service Commission*, 31 Ill.2d 482, 202 N.E.2d 522 (1964). Thus, like statutes, administrative rules, like § 450.70, enjoy a presumption of validity. *See Northern Illinois Automobile Wreckers, Etc.*, 75 Ill.2d 53, 25 Ill.Dec. at 667, 387 N.E.2d at 323.

The plaintiff has failed to demonstrate that this presumption of validity should be overridden in this case. While the plaintiff properly asserts that the Illinois Appellate Court, in *Arthur Rubloff and Company*, held that oral exclusive agency agreements were enforceable, 80 Ill.App.3d 867, 36 Ill. Dec. at 197–98, 400 N.E.2d at 617–18, this conclusion does not remove the presumption that § 450.70 is valid. *Arthur Rubloff and Company* was decided in 1980, three years before § 450.70 was promulgated. Also, the plaintiff's claim that the defendant was a multi-national corporation also does not provide a sufficient basis for overriding the requirements of § 450.70. Since § 450.70 requires all listing agreements to be in writing and the plaintiff clearly alleges that the exclusive agency agreement regarding the South Holland property was oral, this allegation cannot possibly state a claim for which relief can be granted.

Furthermore, as with the letters regarding the Plum Grove and Elk Grove properties, the Letter of Intent regarding the South Holland property contains contingencies and clearly states that the letter is not intended to be a binding commitment. *See* Complaint, Exhibit E. For this reason, even if the oral exclusive agency agreement was valid under Illinois law, the plaintiff has not adequately alleged that it produced a purchaser ready, willing, and able to buy the South Holland property. The court therefore dismisses Count I in its entirety.

■ The defendant also moves this court to dismiss Counts II and III of the plaintiff's complaint because the agreement between Great–West and Progressive regarding the Woodfield Business Center properties is void under Illinois law. The defendant argues that the agreement is void under Section 5819 of The Real Estate License Act of 1983 ("the Act"), 111 Ill.Rev. Stat. § 5819 (Supp.1989) because the agreement does not contain an automatic termination date. The plaintiff contends that the defendant, a sophisticated multi-national corporation, should not be allowed to benefit from and then defeat the same contract. The plaintiff asserts that "one should not be able to profit by its own omissions." Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss at 4.

Section 5819 clearly states that "Any listing contract not containing a provision for automatic expiration shall be void." 111 Ill.Rev.Stat. § 5819.[2] Illinois courts have consistently stated that the Act, which includes § 5819, is intended to promote the public welfare. *See Bisluk v. Town Realty, Inc.*, 90 Ill.App.3d 1039, 46 Ill.Dec. 429, 430, 414 N.E.2d 151, 152 (1980); *Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc.*, 87 Ill.App.3d 480, 42 Ill.Dec. 360, 364, 408 N.E.2d 1069, 1073

---

1. 68 Ill.Admin.Code ch. I, § 450.70.

2. In its entirety, § 5819 states:
 No licensee shall obtain any written listing contract which does not provide for automatic expiration within a definite period of time. No notice of termination at the final expiration thereof shall be required. Any listing contract not containing a provision for automatic expiration shall be void. 111 Ill.Rev. Stat. § 5819.

(1980); *May v. Pollution Control Board,* 35 Ill.App.3d 930, 342 N.E.2d 784 (1976). Specifically, Illinois courts have determined that the requirement of an automatic termination date in all listing agreements is designed "to prevent an owner's land from stagnating indefinitely in one broker's hands on the market. A time limitation is necessary because an owner may find it difficult to revoke the agency agreement with the broker after the broker has made substantial endeavors to sell the property." *Edens View Realty & Investment, Inc.,* 87 Ill.App.3d 480, 42 Ill.Dec. at 364, 408 N.E.2d at 1073. Due to this interest in protecting the public, this court must construe the provision liberally. *See Bisluk,* 90 Ill.App.3d 1039, 46 Ill.Dec. at 430, 414 N.E.2d at 152.

The Agreement alleged in Count II of this action provides that the relationship between Progressive and Great–West could be terminated at any time for cause or without cause if the party terminating the agreement gives the other party ninety days written notice. *See* Complaint, Exhibit F. In any event, the Agreement states that the relationship could not be terminated *without cause* within the first twelve months from the commencement of the Agreement. *See Id.* As this explanation reflects, the Agreement clearly does not provide the requisite automatic termination date. Rather, the Agreement merely provides several contingencies for its termination. Given the liberal construction required of § 5819 and the Act's intention to protect the public welfare, the court finds that the Agreement in this case must be considered void under Illinois law.[3]

The plaintiff's contention that the Agreement should not be considered void because Great–West is a sophisticated multi-national corporation who participated in the drafting of the Agreement is without merit. As the court stated in *Bisluk,* "The Act mandates that a broker cannot accept a listing agreement which does not provide a specific termination date." 90 Ill.App.3d 1039, 46 Ill.Dec. at 431, 414 N.E.2d at 153. More-over, § 5819 places no such limitation on the requirement that all listing agreements contain automatic termination dates.

The plaintiff argues that even if the Agreement is void, it is not prohibited from recovering the value of the services it rendered to the defendant. In essence, the plaintiff argues that it is entitled to recover its commissions under the theory of quantum meruit. In *Edens View Realty & Investment, Inc.,* the court recognized that a plaintiff can recover under quantum meruit on a claim made under an express contract where the plaintiff fails to establish the contract but does demonstrate that services were in fact rendered. 87 Ill.App.3d 480, 42 Ill.Dec. at 365, 408 N.E.2d at 1074 (citing *Slater v. Jacobs,* 56 Ill.App.3d 636, 14 Ill.Dec. 1, 371 N.E.2d 1054 (1977)). As the court stated, the "plaintiff's failure to include quantum meruit in its complaint which sought contractual relief, is therefore not fatal to its recovery under this theory." *Edens View Realty & Investment, Inc.,* 87 Ill.App.3d 480, 42 Ill.Dec. at 365, 408 N.E.2d at 1074.

Under *Edens* then, this court can consider the plaintiff's argument that it is entitled to recover commissions for the services it rendered Great–West. The basis for recovery under quantum meruit is the defendant's receipt from the plaintiff of a benefit which is unjust for him or her to retain without paying for it. *Id.* 42 Ill.Dec. at 366, 408 N.E.2d at 1075; *Arthur Rubloff and Company,* 80 Ill.App.3d 867, 36 Ill.Dec. at 200, 400 N.E.2d at 620. In order to recover on this basis, it is therefore essential that the services performed by the plaintiff were of some measurable benefit to the defendant. *Van C. Argiris & Co. v. FMC Corp.,* 144 Ill.App.3d 750, 98 Ill.Dec. 601, 604, 494 N.E.2d 723, 726 (1986).

With respect to the recovery of commissions by real estate brokers, the broker must prove that "he is the procuring cause of the sale to establish the fact that the services rendered were valuable and beneficial to the seller." *Id.; see also Edens*

---

**3.** As the defendant points out, the Agreement also fails to state the listing price for the proper-

ties as required under 68 Ill.Admin.Code ch. I, § 450.70.

*View Realty & Investment, Inc.*, 87 Ill. App.3d 480, 42 Ill.Dec. 360, 408 N.E.2d 1069. This standard is based upon Illinois courts' conclusion that a broker is normally entitled to a commission only when he or she can demonstrate the he or she has effected or accomplished the actual sale of the property. *Id.* As the court stated in *Van C. Argiris & Co.*:

> Standing alone, the day-to-day activities performed by the broker, such as the making of phone calls and the writing of letters, do not benefit the seller, but rather benefit the broker in his quest to become the procuring cause of the sale. It is only when the broker has procured a buyer who is ready, willing and able to consulate a sale on the seller's terms that the seller has received some measurable benefit as a result of the broker's efforts. *Id.*

In order for Progressive to state a valid claim for recovery under a theory of quantum meruit, the allegations in Progressive's complaint must demonstrate that Progressive procured the sale of the Westfield Business Center properties. Here, however, the plaintiff's complaint does not demonstrate this requirement.

The complaint here clearly states that Great–West rejected the offer procured by the plaintiff and, instead, entered into a contract with a different party. *See* Complaint at 10–11. Thus, even construing the complaint liberally, as is required on a motion to dismiss, the allegations cited clearly prevent the plaintiff from recovering commissions established in the invalid Agreement on the theory of quantum meruit. The court therefore dismisses Counts II and III of the plaintiff's complaint for a failure to state a claim for which relief can be granted.

■ Finally, the defendant argues that Count IV of the plaintiff's complaint should be dismissed because it fails to adequately allege that Progressive was entitled to recover its commission for procuring the lease with United on the basis of quantum meruit. As already explained, to establish that its services were valuable and beneficial to the defendant, the plaintiff must allege that it was the procuring cause of the lease. *See Van C. Argiris & Co. v. FMC Corp.*, 144 Ill.App.3d 750, 98 Ill.Dec. 601, 604, 494 N.E.2d 723, 726 (1986). The defendant argues, and the court agrees, that the plaintiff has not met this burden because Progressive fails to allege that its negotiations with United resulted in the execution of a lease between Great–West and United. Indeed, the defendant asserts that the proposed lease was never actually executed. The plaintiff fails to address this issue in its allegations and does not refute the defendant's claim in its brief. Therefore, because the plaintiff fails to adequately allege that it was the procuring cause of a lease between Great–West and United, the court also dismisses Count IV of Progressive's complaint.

### Conclusion

For the reasons stated above, the court grants the defendant's motion to dismiss the case for a failure to state a claim for which relief can be granted.

### MEMORANDUM OPINION AND ORDER

Plaintiff Progressive Realty Advisors, Inc. ("Progressive") brought this suit against defendant The Great–West Life Assurance Company ("Great–West"), seeking the recovery of real estate brokerage commissions and the value of services rendered with respect to certain properties owned by the defendant. Progressive claimed that it possessed exclusive listing agreements and an independent contractor agreement with Great–West to sell or lease several of Great–West's properties. The plaintiff further claimed that in several instances the defendant refused to sell the properties to purchasers procured by the plaintiff.

The defendant subsequently moved to dismiss the plaintiff's case pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief could be granted. On December 12, 1991, the court issued a memorandum opinion and order dismissing the plaintiff's case. With respect to Count I of the plaintiff's complaint, the court found that the plaintiff

could not establish a prima facie case for compensation because it failed to adequately demonstrate that it had produced a ready, willing, and able buyer. The court also dismissed Counts II and III of the plaintiff's complaint because the agreement between Progressive and Great-West at issue in these counts was void under Illinois law. The court also found that the plaintiff failed to adequately establish a prima facie case for recovery under the theory of quantum meruit. The court also dismissed Count IV of the plaintiff's complaint because the plaintiff again failed to adequately allege a prima facie case for recovery under quantum meruit.

This case is currently before the court on plaintiff Progressive's motion for reconsideration of the court's December 12 order. For the reasons stated below, the court denies the plaintiff's motion.

### The Motion for Reconsideration

 Motions for reconsideration are not a matter of routine practice in this jurisdiction. *Settino v. City of Chicago*, 642 F.Supp. 755, 759 (N.D.Ill.1986). They are not cognizable under the Federal Rules of Civil Procedure nor authorized by the local rules of this district. *Fisher v. Samuels*, 691 F.Supp. 63, 74 (N.D.Ill.1988). Despite their generally restricted role, such motions are appropriate in rare instances where "applicable law or the known facts have changed since an issue was submitted to the court." *National Union Fire Insurance Co. of Pittsburgh v. Continental Illinois Corp.*, 116 F.R.D. 252, 253 (N.D.Ill. 1987). Motions for reconsideration are not appropriate, however, to introduce new legal theories or new evidence which could have been adduced during the pendency of the prior motion. *Keene Corp. v. International Fidelity Insurance Co.*, 561 F.Supp. 656, 665 (N.D.Ill.), *aff'd*, 736 F.2d 388 (7th Cir.1982). Moreover, they are not appropriate when the moving party simply advances arguments which the court has already rejected. *Fisher*, 691 F.Supp. at 74.

In this case, the plaintiff contends that reconsideration is appropriate because the court improperly determined that the sale offers obtained by the plaintiff did not have to be accepted by the defendant and that since the plaintiff was not the procuring cause of various sales, Progressive was not entitled to recover broker's commissions. However, the plaintiff does not provide the court with any reasons to reconsider the court's ruling on the motion to dismiss. The plaintiff does not assert that changes in the law have occurred since the motion to dismiss was presented to the court or that the known facts of the case have changed.

Rather, the plaintiff merely takes issue with the court's decision and repeats arguments raised in its briefs on the motion to dismiss. For example, the plaintiff contends that it produced a ready, willing, and able buyer for the defendant's properties because the pertinent sales contracts demonstrate that the offers should have been acceptable to the defendant. In our December 12 order, the court thoroughly explained that the defendant was entitled to reject the offers at issue for a failure to meet its asking price for the properties. *See Kenilworth Realty Co. v. Sandquist*, 56 Ill.App.3d 78, 13 Ill.Dec. 844, 371 N.E.2d 936 (1977). Contrary to the plaintiff's unsupported assertion in its current motion, the court also determined that industry custom and practice should not be considered when determining whether the offers procured by the plaintiff conformed to the defendant's listing agreements.

In its motion for reconsideration, the plaintiff also repeats its argument that it established a prima facie case for recovery under a theory of quantum meruit. However, following thorough consideration of this claim, the court, in our December 12 order, determined that the plaintiff failed to establish that it was the procuring cause of the defendant's property sales. As these examples suggest, the plaintiff clearly moves for reconsideration merely because it disagrees with the court's prior decision. As already noted, disagreement with a court's earlier decision is not an appropriate basis for a motion for reconsideration. *See Fisher*, 691 F.Supp. at 74. The court therefore denies the plaintiff's motion for reconsideration in this case.

*Conclusion*

For the reasons stated above, the court denies plaintiff Progressive's motion for reconsideration.