**PRODUCTION PROCESS CONSULTANTS, INCORPORATED, an Indiana Corporation, Plaintiff–Appellant,**

v.

**WM. R. HUBBELL STEEL CORPORATION, an Illinois Corporation, and Capricorn II, an Illinois Corporation, Defendants–Appellees.**

No. 92–1827.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 11, 1993.

Decided March 26, 1993.

Steven W. Handlon (argued), Handlon & Handlon, Portage, IN, for plaintiff-appellant.

Paul A. Leonard, Jr. (argued), Goodman, Ball & Vanbokkelen, Highland, IN, for defendants-appellees.

Before BAUER, Chief Judge, and POSNER and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

The plaintiff-appellant, Production Process Consultants ("PPC"), filed a diversity action against Hubbell Steel ("Hubbell") for *quantum meruit* and unjust enrichment. The case, upon agreement of the parties, was assigned to a U.S. magistrate judge pursuant to 28 U.S.C. § 636. The magistrate denied the plaintiff any relief because the defendant, Hubbell, did not receive a benefit from PPC's services. PPC appeals. We affirm.

## I. BACKGROUND

Hubbell Steel specializes in the sale and distribution of galvanized steel. Galvanizing is a process in which steel coils are coated with zinc to prevent corrosion of the steel. In 1986, Hubbell purchased a used galvanizing line (the "line") for $1,500 from U.S. Steel. During the next three years, Hubbell invested another $500,000 to upgrade the line. It was Hubbell's intention to convert the line from an experimental project into an operating production line which would produce prime quality galvanized steel coils through a process that was less than state-of-the-art. Based on the experience gained from operating the experimental line, Hubbell planned to build its own state-of-the-art galvanizing line. Hubbell eventually found that the line was less than a money making venture and ceased production late in 1989. Following the shutdown, Hubbell commenced negotiations with PPC for additional improvements to the line with an option for PPC to enter a lease-purchase program for the line. Hubbell and PPC never entered into a written agreement, but in December of 1989, PPC orally agreed to rebuild the line, provided that Hubbell would supply the capital and materials for the improvements. Additionally, PPC agreed to operate the line on a conversion price with PPC receiving eight cents for every pound of marketable galvanized steel.

Relying upon the oral agreement, PPC made substantial improvements to the line and Hubbell supplied in excess of $100,000 of working capital. PPC's efforts increased the line's production rate, but the steel product turned out to be of inferior quality with some twenty-five percent of it having to be rejected as scrap. The rejection rate, combined with the increase in the cost of zinc plus a decrease in the market price and demand for galvanized material, rendered the line economically unprofitable prompting Hubbell to terminate production in May of 1990. Since the shutdown, no one including PPC has made an offer for the line. Based on the record presented, combined with the lack of interested purchasers, the magistrate concluded that the line was of minimal value and further, PPC's efforts did not increase its fair market value.

PPC argues on appeal that the magistrate erred in dismissing their *quantum meruit* claim solely because Hubbell failed to receive any direct pecuniary gain. PPC asks us to vacate the judgment in favor of Hubbell and enter a judgment in favor of the plaintiff. Alternatively, PPC requests that we reverse with instructions to determine the reasonable value of PPC's services.

## II. DISCUSSION

■ Both parties agree and the magistrate found that Hubbell and PPC never entered into a written contract. Thus, the case hinges on whether the plaintiff is entitled to recover under the theory of *quantum meruit*. A claim based on *quantum meruit* is cognizable under Illinois law. *See, e.g., Bank of Alton v. Bowman*, 198 Ill.App.3d 329, 144 Ill.Dec. 478, 479, 555

N.E.2d 997, 998 (1990). Illinois courts have explained that

"[t]he term *'quantum meruit'* literally means 'as much as he deserves.' ... It is a term that describes a recovery which is based on the reasonable value of services that have been performed.... The theory of recovery in *quantum meruit* is that the defendant has received a benefit which would be unjust for him to retain without paying for it.... Therefore, in order to recover in *quantum meruit,* it is essential that the services performed by the plaintiff must be of some measurable benefit to the defendant."

*Van C. Argiris & Co. v. FMC Corp.,* 144 Ill.App.3d 750, 98 Ill.Dec. 601, 603–04, 494 N.E.2d 723, 725–26 (1986) (citations omitted). The plaintiff states that the magistrate's undisputed findings of fact reveal that the plaintiff made substantial changes to the line having value in excess of $100,000. For some reason, the plaintiff ignores the fact that those changes resulted in no benefit to the defendant. At oral argument, this was likened to the scenario of an attorney taking a case on a contingent fee basis. The attorney may invest a great number of hours and overhead on behalf of his client's case but if the client loses, the attorney receives nothing but valuable experience because the client received no benefit.

The plaintiff, in support of his *quantum meruit* theory of recovery makes but one plausible argument. He argues that based on the Restatement of Restitution, he is entitled to recover because he performed the service of improving the galvanizing line at the request of the defendant. The Restatement provides:

§ 1. Unjust Enrichment.

A person who has been unjustly enriched at the expense of another is required to make restitution to the other.

Comment:

a. a person is enriched if he has received a benefit (see Comment b)....

b. ... *A person confers a benefit upon another if he ... performs services beneficial to or at the request of the other....*

Restatement of Restitution, § 1 (1937) (emphasis added). One court has interpreted Illinois law and applied § 1, Comment b to a *quantum meruit* claim. In *Bond v. Oak Mfg. Co.,* 293 F.2d 752, 753 (3rd Cir.1961), the Third Circuit Court of Appeals determined that although an oral agreement between the plaintiff and defendant was unenforceable (because of the Illinois statute of frauds) the plaintiff was entitled to recover under a quasi contract theory. The court held

"The plaintiff's efforts fall within the definition of benefit taken from the Restatement of Restitution, § 1, Comment b (1937):

'A person confers a benefit upon another if he ... performs services beneficial to or at the request of the other, ...'

The plaintiff's efforts on behalf of the defendant fall within this description."

*Id.* PPC argues that we should apply the definition of "benefit" adopted by the Restatement. According to PPC, Hubbell received a benefit simply because PPC "perform[ed] services beneficial to or at the request of [Hubbell]." PPC maintains that this definition of benefit negates any requirement that the services performed be of pecuniary benefit so long as the services were requested by the defendant. Thus PPC claims that the magistrate erred in emphasizing that: (1) the defendant had in no way profited; (2) the line was losing money; and (3) there had not been an increase in the fair market value of the line. PPC argues "[i]t is in this conclusion of law—that the benefit to the recipient must be a direct pecuniary gain to sustain a claim based upon unjust enrichment—that the Magistrate erred." Appellant's Brief at 27.

While the Restatement's definition of benefit may have applicability in some situations, it is not dispositive in this factual

situation. We are of the opinion that even if Hubbell received a benefit for the service it requested of PPC, it would not be *unjust* for Hubbell to retain the benefit. The Restatement explains:

    c. *Unjust retention of benefit.* Even where a person has received a benefit from another, he is liable to pay therefor only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it. *The mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor....*

Restatement of Restitution, § 1, Comment c (emphasis added). In this dispute, two experienced and intelligent businessmen negotiated at arm's length with the plaintiff agreeing to provide his services and experience and while the defendant obligated himself to provide the capital necessary to improve the galvanizing line. Although they failed to reach a meeting of the minds and memorialize their agreement in writing, both parties agree that the plaintiff was to be compensated by receiving eight cents for each pound of marketable galvanized steel the line generated. In fact, PPC was paid at that rate for the marketable galvanized steel produced. Unfortunately for the plaintiff, PPC was unable to operate the line in a profitable manner, thus the defendant was forced to terminate production. The shutdown was the result of many contributing factors, including the amount of scrap steel produced in the process (25%), the lack of quality of the marketable steel produced on the line, the increased cost of zinc, and the decrease in demand and cost for galvanized steel in the market. Although the magistrate found it impossible to assess which of the parties assumed the risk of unprofitability because of the absence of contract, the magistrate did find that no hourly wage or consultant's fee was contemplated by the parties. The agreement the parties pursued can best be likened to a joint venture where both parties contribute to the undertaking and both parties share in the profits. In this case PPC stood to reap a great profit (eight cents per pound for marketable galvanized steel) as long as the line was profitable. It is also clear that PPC stood to lose if the line could not be made profitable.

The Restatement of Restitution, § 1, Comment e further supports our holding that PPC may not recover from Hubbell.

    e. *Where benefit and loss do not coincide.* There are situations, however, in which a remedy is given under the rules applicable to this Subject, where the benefit received by the one is less than the amount of the loss which the other has suffered. In such a case, *if the transferee was guilty of no fault*, the amount of recovery is usually limited to the amount by which he has been benefited.

Restatement of Restitution, § 1, Comment e (emphasis added). In this case, Hubbell was not "at fault," *see e.g., H.W. Jaeger & Assoc. v. Slovak Am. Charitable Ass'n,* 156 Ill.App.3d 106, 107 Ill.Dec. 710, 713–14, 507 N.E.2d 863, 866–67 (1987) (emphasizing that the innocence of the nonbreaching party and the culpability of the breaching party affects recovery), thus any recovery by PPC must be limited to the "amount by which [Hubbell] has been benefited." The magistrate's findings clearly reveal that Hubbell received no pecuniary benefit, thus PPC is not entitled to recover under a theory of *quantum meruit.* Accordingly, the magistrate's denial of relief is

AFFIRMED.