CARMEN CRUZ, Plaintiff and Counterdefendant-Appellee, v. EDWARD STAPLETON III, Indiv. and d/b/a Sedaer Buyer's Broker, Defendant and Counterplaintiff-Appellant.

Second District   No. 2—92—1160

Opinion filed November 2, 1993.

Edward Stapleton III, of Chicago Heights, appellant *pro se.*

Donald Henderson, Jr., of Northern Illinois University, of De Kalb, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Carmen Cruz, sought to purchase a home in the De Kalb area. She and defendant, Edward Stapleton, entered into an oral agreement under which defendant would act as a "buyer's broker" to help her find a suitable property. Plaintiff was unable to close on a purchase within the time she desired, and she terminated the agreement with defendant.

In a small claims suit, plaintiff sued defendant for the return of an "escrow account" of $500 that she paid defendant to facilitate bids on properties that plaintiff might wish to purchase. Defendant denied liability and filed a counterclaim for $1,263.50, which he alleged was the net amount plaintiff owed him for the 35 hours of service he performed under the parties' oral contract. The trial court awarded plaintiff $500 plus costs and attorney fees and denied the counterclaim. Defendant timely appealed.

Defendant's *pro se* appellate brief contains numerous contentions, but in essence he argues that the trial court erred in denying him recovery for the reasonable value of his services under a theory of *quantum meruit.* We disagree and affirm.

Plaintiff's complaint alleged the following facts. In December 1991, the parties agreed orally that defendant would act as plaintiff's "buyer's broker" to help her find a private residence to purchase. Under the agreement, defendant's sole remuneration would be a commission or "contingent fee" that defendant would receive if and when plaintiff purchased a home that defendant helped her to procure. The agreement specified no time limit. At some point in their discussions, defendant told plaintiff that her opportunity to bid on a home would improve if he had $500 at his immediate disposal to use as earnest money. On December 28, 1991, plaintiff tendered defendant a check for $500. She made the check out to "Sedaer Escrow Account" and paid defendant in reliance on his statements that the money would be used to support her bid on a house.

Despite both parties' best efforts, plaintiff was unable to find suitable housing, and she did not purchase or agree to purchase any property that defendant found for her. Plaintiff sought to terminate the oral contract and asked defendant to return the $500. Defendant refused to do so and demanded an additional $795 in payment for his services.

Plaintiff alleged that defendant owed her $500 and that he procured this money by fraud. Plaintiff sought the return of the $500, punitive damages, costs, and attorney fees.

Defendant filed a counterclaim alleging that plaintiff owed him $763.50, the balance of $1,263.50 for services at his normal rate of $35 per hour minus a credit for the $500 payment.

The parties agree that the following evidence was adduced at trial. Plaintiff testified that late in 1991 she was a graduate student and an instructor at Northern Illinois University in De Kalb. Although she was living in Chicago at the time, she decided to find housing in the De Kalb area in time for the start of the spring semester in January 1992.

Plaintiff first met defendant in December 1991, after he answered her call about a possible apartment vacancy. Defendant showed plaintiff several apartments, but she told him she was interested in buying a residence. Defendant offered to assist her in finding a residence in the De Kalb area. Plaintiff expressed interest in this proposal, and the parties met on December 18, 1991. During this meeting, defendant suggested that plaintiff give him $500 to use as an escrow account that defendant would have at his disposal to facilitate bids on a house plaintiff might want to buy. Plaintiff decided that this was reasonable, and she made out a check for $500. Plaintiff wanted to speed the process along if possible because her bank was in Chicago and she wanted to find housing soon.

Plaintiff testified that defendant never stated or implied to her that the $500 might be used as payment for services rendered. According to plaintiff's testimony, defendant agreed that he would receive a commission only at the time that plaintiff closed on the purchase of a house that defendant helped her to find. Defendant never told plaintiff that he wished to be paid by the hour regardless of whether plaintiff found a house. Plaintiff would not have entered into the agreement had she believed that she would be liable for hourly charges regardless of whether defendant helped her to buy a house. Also, the parties never discussed the duration of the contract. Plaintiff believed that she could terminate the contract at any time.

Plaintiff made bids on two houses that defendant helped her to locate. The bids were not accepted as they were too low. After the second bid expired, on or about January 13, 1992, plaintiff told defendant she no longer wanted defendant's services, primarily because the semester was about to begin. Plaintiff demanded her $500 back, but defendant refused to pay.

The court admitted into evidence two of plaintiff's offers to purchase real estate. Each proposed contract contains several contingencies, including the specification that the buyer would pay the buyer's broker's fee "at first closing." One of these offers stated that the fee for the buyer's broker was $2,000; the other offer did not specify the amount of the fee. Plaintiff testified that defendant prepared both of these offers.

Defendant testified that, on December 18, 1991, he and plaintiff met. At this meeting, defendant told plaintiff that he would be willing to help her find housing in the De Kalb area. He told plaintiff that his fee would be $2,000, payable at the closing. The parties did not discuss what amount would be due if plaintiff did not buy a house. The parties did not discuss the duration of the agreement, but defendant understood that he would have a reasonable time in which to find a house for plaintiff. Defendant testified that, from his familiarity with trade custom, a reasonable time meant six months. Defendant also testified that he understood that the fee was "non-contingent" but that it would be deferred until the time plaintiff closed on a purchase.

After the agreement, defendant accepted the $500 check as an escrow account that would help to facilitate his negotiations on plaintiff's behalf.

The trial court found no fraud by defendant, but it awarded plaintiff $500 plus attorney fees and costs. The court held that defendant had not proved his counterclaim.

The court made the following factual findings. The $500 plaintiff paid defendant was intended for use toward a possible purchase and not as payment for services rendered. The parties agreed that defendant would be paid not by the hour, but out of money available when plaintiff closed on a purchase of a house. The parties never agreed that defendant would receive $35 per hour whether or not he succeeded in finding a house for plaintiff. Plaintiff would not have agreed orally to such an arrangement, as it could have cost her greatly even if defendant's efforts were in vain. There was no meeting of the minds on how defendant would be compensated (if at all) for work that did not result in a purchase. As real estate brokers customarily work on commission, and nothing here suggested the parties agreed

to deviate from this custom, defendant was entitled only to a commission at the time of a closing.

On appeal, defendant argues that the trial court's decision is contrary to case law under which a broker may be compensated in *quantum meruit* for services he rendered before his client unilaterally terminated the client-broker relationship.

■■ Plaintiff maintains that defendant has waived this argument by failing to raise it at trial. We do agree with plaintiff that an unsuccessful party may not raise a new theory of recovery on appeal. (*Malatesta v. Leichter* (1989), 186 Ill. App. 3d 602, 614.) However, given the informality of the trial proceedings and the limited record, we cannot say that defendant has waived the argument he now advances.

The small claims counterclaim alleged that plaintiff owed defendant for "services rendered under oral contract or reliance upon [plaintiff's] statements." Defendant argued that he was entitled to compensation for the time that he actually worked for plaintiff. He introduced evidence that he worked a specific number of hours. It appears that, in the relatively informal setting of the small claims proceeding, defendant argued alternatively that plaintiff had breached her contract or that defendant was entitled to recovery under a contract implied in law even if there was no contract in fact. Under these circumstances, we choose to reach the merits of defendant's argument.

Defendant does not directly challenge the trial court's finding that, under his oral contract with plaintiff, he was to be compensated by a commission at the time of a closing rather than by an hourly fee that was not contingent upon the plaintiff's success in finding a house with his aid. Rather, he argues that, even where a broker's payment is contingent upon a condition that goes unfulfilled, *quantum meruit* allows recovery when the client unilaterally terminates the contract and thus prevents the contingency from occurring. We disagree with defendant's interpretation of the case law of *quantum meruit*.

■■ Recovery in *quantum meruit*, or quasi-contract, is a substitute for recovery on an express contract. (*Prodromos v. Poulos* (1990), 202 Ill. App. 3d 1024, 1032.) Where there is no contract in fact upon which liability may rest, a party may recover in *quantum meruit* where the other party has received a benefit for which justice requires payment. (*Paradise v. Augustana Hospital & Health Care Center* (1991), 222 Ill. App. 3d 672, 677; *Telander v. Posejpal* (1981), 94 Ill. App. 3d 616, 626.) Recovery in quasi-contract requires a reasonable expectation that the other party would pay for the services rendered. (*Paradise*, 222 Ill. App. 3d at 677; *Prodromos*, 202 Ill. App. 3d

at 1032.) Thus, *quantum meruit* is not a vehicle by which a party who has made a bad agreement may ask a court to change the terms of the contract to fulfill that party's subjective expectations. *Industrial Lift Truck Service Corp. v. Mitsubishi International Corp.* (1982), 104 Ill. App. 3d 357, 360.

We conclude that *quantum meruit* has no application to this case. Here the parties agreed that defendant would be compensated by commission upon a sale of which he was the procuring cause. There was no reason for either party to expect that defendant would be compensated for time he expended in preliminary investigation or negotiations. Defendant gives us no reason to upset the trial court's finding that defendant, a licensed professional who drew up the offers to purchase, assumed the risk that he would not be compensated if the parties' honest efforts failed to produce the benefit that plaintiff sought.

Directly on point is *Van C. Argiris & Co. v. F M C Corp.* (1986), 144 Ill. App. 3d 750, a case that neither party has cited. In *Argiris*, the plaintiff real estate broker sought to recover for the value of preliminary services it rendered to defendant, a seller that later selected another broker as its exclusive agent. Although the defendant eventually sold the property, the evidence showed that the second broker, not the plaintiff, procured the sale. The plaintiff made some efforts on the defendant's behalf, but these efforts did not lead to finding the defendant a ready, willing, and able buyer.

In holding that the plaintiff could not recover in *quantum meruit* for its services, the appellate court noted that, customarily, brokers are compensated only when they present ready, willing, and able buyers; preliminary activities such as showing properties and making telephone calls are not a separate benefit for which clients are liable even if the broker never procures a buyer. (*Argiris*, 144 Ill. App. 3d at 753-55.) The court explained that, although these preliminary services might have some value to the client, they were of no benefit in a legal sense to the client. (*Argiris*, 144 Ill. App. 3d at 754-55.) The court concluded, in reasoning equally applicable to the relationship between the buyer and the buyer's broker here, that "[w]here *** preliminary services are rendered to gain a business advantage with the expectation of obtaining a hoped-for contract, without any reasonable anticipation on the part of either the plaintiff or the defendant that reimbursement will directly result, quasi-contractual relief is unwarranted." *Argiris*, 144 Ill. App. 3d at 755.

As we find no error in the trial court's factual findings or conclusions of law, the judgment of the circuit court of De Kalb County is affirmed.

Affirmed.

GEIGER and COLWELL, JJ., concur.