2-98-0082

December 31, 1998

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

BURNHAM MANAGEMENT COMPANY,     ) Appeal from the Circuit Court

                                ) of Kane County.

Plaintiff-Appellee,        )

                                )

v.                           ) No. 97--LM-1547

                                )

YOLANDA DAVIS,                  ) Honorable

                                ) Donald J. Fabian,

Defendant-Appellant.       ) Judge, Presiding.

_________________________________________________________________

JUSTICE THOMAS delivered the opinion of the court:

The plaintiff, Burnham Management Company, filed this forcible entry and detainer action against the defendant, Yolanda Davis, to recover possession of the premises that the defendant leased at the Mill Apartments in Elgin, Illinois.  The defendant's tenancy was federally subsidized.  The plaintiff manages the Mill Apartments.  The plaintiff's complaint also claimed rent of $1321 from April 1, 1997, through August 31, 1997.  After a bench trial, judgment was entered for the plaintiff on December 11, 1997, for possession of the premises.  The court continued the cause to December 17, 1997, and on that date, it entered judgment in favor of the plaintiff for $2,270, which represented unpaid rent from February 1, 1997, through December 31, 1997, less a set off for some rent paid by the defendant during that period.  On January 16, 1998, the defendant filed her notice of appeal from the orders entered on December 11, 1997, and December 17, 1997.

On appeal, the defendant argues that (1) the plaintiff's retroactive interim and annual recertifications of the defendant's rental obligation were improper and resulted in an incorrect amount being demanded in the owner's 10-day notice; (2) the plaintiff waived its right to possession when the plaintiff agreed to accept a lesser amount than that demanded in the 10-day notice and then later refused to accept the lesser amount; and (3) the plaintiff's 10-day notice was defective precluding the trial court from exercising jurisdiction to enter an order on behalf of the plaintiff.

The record on appeal contains no report of proceedings.  However, the parties have filed an agreed statement of facts pursuant to Supreme Court Rule 323(d) (166 Ill. 2d R. 323(d)).  The  parties' agreed statement of facts reveals in relevant part that the defendant's tenancy was subsidized by the U.S. Department of Housing and Urban Development (HUD) and was controlled, in part, by the HUD handbook.  Under the HUD program, the defendant was to pay 30% of her adjusted annual income toward her monthly rent and the balance was to be paid by HUD.  The plaintiff was required to annually verify tenants' incomes and compute tenants' rents and assistance payments (annual recertification).  The defendant was required to report changes in income and household composition that occurred between annual recertifications, at which time rent was to be recalculated (interim recertification).

The defendant testified that the plaintiff brought a previous eviction action against her in 1996 (the 1996 eviction case), which concluded on March 13, 1997.  On January 7, 1997, while the 1996 eviction action was still pending, the defendant found employment.  Prior to that time, she had not been employed since August 1996.  Accordingly, her rental obligation after August 1996 and prior to an interim recertification was set at $0 per month.  The defendant admitted that she did not report her employment to the plaintiff until March 13, 1997, the date judgment was entered in her favor in the 1996 eviction action.  On March 17, 1997, the defendant met with Simona Rhodes, the assistant manager at the Mill Apartments.  At that time, the defendant filled out paperwork so her rent could be recalculated.  An interim recertification, covered the period from February 1, 1997, through March 30, 1997.  An annual recertification, covered the period from April 1, 1997, through March 30, 1998.

The defendant further testified that on April 17, 1997, the plaintiff sent the defendant a letter informing her that her monthly rental obligation was $259, effective February 1, 1997.  On that same day, the plaintiff sent the defendant another letter informing her that her monthly rental obligation was $259, effective April 1, 1997.  According to the defendant, she was told on May 7, 1997, that she owed $835 in past due rent and then signed a repayment agreement for that amount.

The defendant also testified that on August 19, 1997, she received a 10-day notice from the plaintiff.  At that point, she talked with Betty Cooke and Simona Rhodes.  She stated that Cooke told her that if she could pay $700 by the end of the 10-day period in the notice, she could enter into a repayment agreement for the remaining money.  The defendant stated that she contacted three agencies for rental assistance and had commitments of $700.  A few days after receiving the 10-day notice, she was at one of the agencies, the Community Crisis Center.  When a person from that agency called the Mill Apartments, the defendant talked with Rhodes.  According to the defendant, Rhodes said that she had to pay the entire amount of rent owed by the end of the 10-day period or she could not stay in the apartment.

The defendant further stated that she informed the plaintiff on July 31, 1997, that she had reduced income from her job.  She also gave the plaintiff a statement from her employer outlining the days she had been unable to work in June and July 1997 because of illness and that she had been reduced to part-time status.  On August 11, 1997, she signed a verification of employment form at the Mill Apartments.  This document indicated that the defendant's employment had been reduced to part-time status effective August 1, 1997.  The defendant acknowledged that she made only three payments toward her rent between May 27 and August 19, 1997, totaling $579.

According to the defendant, when she received notice of the termination of her tenancy in the 1996 eviction case in October 1996, Rhodes told her that the plaintiff would not accept any rental payments from her because of the eviction case and that she should not come to the office.  She stated that she did not report her employment in January 1997 because she had been told not to come to the office.

Simona Rhodes testified that as of the date of trial in December 1997, the defendant owed $2,377 in past-due rent.  She noted that she performed the recertifications to calculate the defendant's rent.

Betty Cooke, the residential manager at the Mill Apartments, testified that the defendant did not advise the plaintiff that she began working in January 1997 until she testified on March 13, 1997, in the 1996 eviction case that she was employed.  Cooke noted that if a tenant advises of a change in income, an interim recertification is done.  Once recertification is done, if there is an increase in rent, a notice is sent out, and the increase becomes effective the first of the month after a 30-day notice period.  If a tenant does not advise the landlord about a change of income initially and the landlord later discovers the change, any increase in rent becomes effective retroactive to the first of the month after the date of the increase in income.

Cooke further testified that, even if the defendant had informed the plaintiff of her employment immediately after obtaining her job in January 1997, the plaintiff would not have recertified her or recalculated her rent while the eviction action was pending.  She noted that the plaintiff's policy was to refuse to accept rent during the pendency of such an action.  She also stated that performing an interim recertification for the defendant while the 1996 eviction action was pending would have resulted in a waiver of the plaintiff's rights in that case.  Finally, she noted that the recertification process at issue here began on March 17, 1997, after the plaintiff first learned of the defendant's change of income on March 13, 1997.

Based on the foregoing evidence, the trial court entered a judgment on December 11, 1997, for possession in favor of the plaintiff and awarded the plaintiff costs, finding that the defendant had an obligation to report her income in January 1997.  The court continued the matter to December 17, 1997, for a ruling of the amount of past-due rent owed.  The court further ordered that execution of the judgment for possession be stayed until January 12, 1998.  On December 17, 1997, the court entered a judgment against the defendant for $2,270, which the court found represented 11 months of rent at $259 minus rent payments totaling $579 made by the defendant between May and August 1997.  On January 16, 1998, the defendant filed her notice of appeal from the orders entered on December 11, 1997, and December 17, 1997.  Thereafter, the trial court stayed execution of its two orders pending appeal.

As a preliminary matter, we note that the plaintiff filed a motion to dismiss the defendant's appeal for want of appellate jurisdiction under Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)).  It contended that the December 11, 1997, order of possession was a final order, and therefore the defendant's notice of appeal filed more than 30 days from the court's judgment was untimely.  On July 2, 1998, this court denied the plaintiff's motion to dismiss the appeal.  We now reaffirm our prior ruling.  Supreme Court Rule 304(a) provides that if multiple claims for relief are involved in an action an appeal may be taken from a final judgment as to one or more but fewer than all of the claims "only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both."  155 Ill. 2d R. 304(a).  The plaintiff's reliance on 
Foster v. Foster
, 273 Ill. App. 3d 106 (1995), is misplaced.  There, the appellee filed a motion to dismiss an appeal from a judgment for possession for want of jurisdiction because a second count for rent had not yet been decided when the appellant's  notice of appeal was filed.  
Foster
, 273 Ill. App. 3d at 109.  The court found that language in the trial court's written determination that "[e]xecution may issue on or after September 23, 1994," was sufficient to create a final executable and appealable order on the possession count under Rule 304(a).  
Foster
, 273 Ill. App. 3d at 109.  In the case at bar, however, the trial court stayed enforcement of the judgment for possession.  The required written finding under Rule 304(a) is sufficient to establish appellate jurisdiction only if it refers to either the judgment's immediate enforceability or its immediate appealability or both, depending on the type of relief involved.  
In re Application of the Du Page County Collector
, 152 Ill. 2d 545, 550 (1992); 155 Ill. 2d R. 304(a).  The trial court's December 11, 1997, judgment for possession contained no such language; therefore, the order was appealable within 30 days from the resolution of the claim for rent.  See 
Ratkovich v. Hamilton
, 267 Ill. App. 3d 908, 912 (1994).  Accordingly, the plaintiff's lack of jurisdiction argument must be rejected.

On appeal, the defendant first argues that the plaintiff incorrectly calculated her rental obligation for three separate periods: (1) February 1, 1997, through March 31, 1997; (2) April 1, 1997, through May 31, 1997; and (3) June 1, 1997, through August 31, 1997.  She contends that this resulted in an inaccurate amount being listed in the owner's 10-day notice, and that failure to pay that amount was an insufficient reason to terminate her tenancy.

With respect to the period running from February 1, 1997, through March 31, 1997, the defendant  argues that the plaintiff's retroactive interim recertification was improper.  The defendant acknowledges that she generally had a duty to report her change in income but argues that this duty was excused given that the plaintiff told her she could not come into the rental office and later admitted that it would not have conducted any recertification while the 1996 eviction action was pending.

Regarding the period running from April 1, 1997, through May 31, 1997, the defendant contends that the plaintiff improperly made the rent increase from the annual recertification retroactive to April 1, 1997.  The defendant points out that the plaintiff had a duty under paragraph 7 of the lease to request that she report household income for purposes of calculating rent.  Since the plaintiff failed to contact the defendant, the delay in processing the recertification was attributable to the plaintiff.  The defendant maintains that, because the delay in processing the recertification was attributable to the plaintiff, the plaintiff was required to give 30-days' notice before implementing any increase.

The defendant contends that the improper rental calculations resulted in the plaintiff demanding an incorrect amount in the 10-day notice.  Therefore, the defendant's failure to pay the entire amount demanded in the 10-day notice was an improper basis to terminate the defendant's lease.

We find the defendant's arguments in connection with the interim and annual recertifications to be unpersuasive.  Paragraph 4 of the parties' lease provided that the plaintiff could increase the defendant's rent in accordance with the time frames and procedures set forth in the HUD handbook.  The defendant clearly had an obligation to report her change in employment income to the plaintiff.  Section 5--8 of the HUD Handbook required the defendant to report any increase in household income of $40 or more per month.

The defendant's duty to report was not excused by the fact that the plaintiff was repudiating the lease and refusing to accept rent.  Because of the defendant's status as a recipient of federally subsidized housing, this case is more intricate than the typical landlord/tenant relationship.  In this case, the purpose of the type of lease signed by the parties is to make non-low-income housing available to low-income families, thereby achieving HUD's goal of economically-mixed housing.  
Midland Management Co. v. Helgason
, 158 Ill. 2d 98, 105 (1994).  Although HUD is not a party to the lease agreement, it is paying a portion of the market value of the rent in the form of assistance payments to the landlord (see 
Helgason
, 158 Ill. 2d at 105) and requires that the defendant report her increase in income.  Thus, the defendant had a duty to report beyond the lease agreement and could have easily fulfilled that duty with a letter or phone call regardless of whether the plaintiff was recognizing the lease or not.

The fact that the plaintiff admitted it would not have recertified the defendant has no bearing on the outcome here, because the plaintiff's duty to recertify based on the interim change was not triggered until it belatedly became aware of the change.  If the defendant would have simply fulfilled her duty to report, there would have been no question that any increase in rent could only have been made effective upon 30-days' notice pursuant to section 5--12(a) of the HUD handbook.  However, section 5--13(c) of the HUD handbook is equally clear that, absent proper reporting by the defendant, the increase takes effect the first of the month after the increase, which in this case is February 1, 1997.

The defendant's argument that she was prevented by the plaintiff from performing her duty to report or that it would have been a useless act to report has no merit.  As previously noted, the plaintiff could have given notice by phone or letter.  Moreover, the plaintiff did not forbid the defendant from reporting and did not communicate to her that it would not have recertified her. At any rate, the defendant had an independent duty under the HUD rules to report.  There is no indication from the record that the plaintiff prevented the defendant from doing so or that it would have been a useless act.

The plaintiff's rationale for admitting that it would not have recertified the plaintiff even if she had reported her income in January 1997 was that it feared that it would waive its rights in the 1996 eviction case.  We conclude, however, that the plaintiff would not have waived its rights by recertifying the defendant while the 1996 action was pending.  In 
Helgason
, our supreme court reiterated the long established principle that "any act of a landlord which affirms the existence of a lease and recognizes a tenant as his lessee after the landlord has knowledge of a breach of lease results in the landlord's waiving his right to forfeiture of the lease."  
Helgason
, 158 Ill. 2d at 102.  However, the supreme court in 
Helgason
 held that HUD's assistance payments are not "rent," and therefore, the landlord did not waive its rights under the lease by  accepting the assistance from HUD after the notice of termination of the tenant's lease.  
Helgason
, 158 Ill. 2d at 106.  Similarly, we find that the recertification process is a necessary step in qualifying for HUD assistance payments and therefore does not constitute a waiver of a breach of a lease.  Accordingly, we find that the plaintiff could have conducted an interim recertification of the defendant without waiving its rights in the 1996 eviction case.

Nonetheless, we conclude that the defendant's duty to report was not excused, and the interim recertification in this case was properly made effective retroactive to February 1, 1997.  Although the plaintiff had a duty to annually recertify the defendant, which could only be made effective as of June 1, 1997, we have concluded that the interim recertification was properly made effective as of February 1, 1997.  Thus, the interim recertification remained effective until June 1, 1997, when the annual recertification became effective, and the defendant's rent remained at $259 per month regardless of the effectiveness of the annual recertification.  Furthermore, the plaintiff waived any erroneous calculation in her rent by agreeing on May 7, 1997, to pay the plaintiff $835 in rent and failing to assert that the retroactive increases were improper.     

The defendant further argues that the plaintiff incorrectly included in its 10-day notice amounts owed for rent from June 1, 1997, through August 1, 1997.  She claims that she reported to the plaintiff that she had a reduction in hours for June and July 1997 and that this obligated the plaintiff to perform an interim recertification for those months before it could evict her for nonpayment of rent for those months.

We find the defendant's argument flawed.  First, the record does not indicate that she informed the plaintiff that she had a reduction in 
income
 from her employment for June, July and August 1997.  Instead, the plaintiff claimed only that she informed the plaintiff on July 31, 1997, that she had "reduced income from her job."  She also told the plaintiff that she had been reduced to part-time status and handed the plaintiff a statement from her employer outlining the days that she had been ill and unable to work in June and July.  However, she did not specify the period any reduction in income covered.  Moreover, the defendant's trial exhibits reveal only that effective August 1, 1997, she would be working six days per pay period.  The record further indicates that the exhibit showing the effective date of the defendant's part-time status as August 1, 1997, was not received by the plaintiff until August 11, 1997.  Section 5--12(b) of the HUD handbook provides that if the tenant's rent decreases because of an interim adjustment, the owner must make the decrease effective the first day of the month after the date of the action which caused the decrease.  Here, the trial could have properly concluded that the defendant notified the plaintiff on August 11, 1997, of a reduction in work days effective August 1, 1997.  So even if a decrease in rent was warranted, it would not have been effective until September 1, 1997.  Thus, the plaintiff properly claimed past due rent for June through August 1997.

Based on the foregoing, it is apparent that as a result of the delay in the interim and annual recertification process, the defendant's rental obligation of $259 was effective as of February 1, 1997.  Thus, the defendant's total rent obligation from February through August 1997 was $1,813.  The plaintiff acknowledges that the  defendant paid $579 toward her rent.  Thus, the defendant actually owed $1,234 on August 19, 1997, when the plaintiff presented its 10-day notice.

In the present case, the defendant claims that, because the plaintiff incorrectly calculated her past-due rent in the 10-day notice, her failure to pay that amount was not a sufficient reason to terminate her tenancy.  She also argues that, if the amount demanded in the notice was incorrect, the deficiency in the notice would deprive the trial court of subject matter jurisdiction to hear the case.

We first note that the defendant's jurisdictional argument must be rejected.  The defendant has cited no authority for the proposition that the content of a 10-day notice is a jurisdictional defect depriving the trial court of subject matter jurisdiction.  On the other hand, it has been held that it is not a jurisdictional defect to improperly serve a landlord's termination notice (
Prairie Management Corp. v. Bell
, 289 Ill. App. 3d 746, 750 (1997)), and the failure to give a statutorily required 30-day notice, although error, did not deprive the trial court of subject matter jurisdiction (see 
Morris v. Martin-

Trigona
, 89 Ill. App. 3d 85, 88 (1980); 
c.f.
 
Nance v. Bell
, 210 Ill. App. 3d 97 (1991)).  Accordingly, we find that a 10-day notice demanding payment of an incorrect amount as rent does not deprive the trial court of subject matter jurisdiction.

Furthermore, the fact that the 10-day notice may have demanded more than the plaintiff was entitled to receive does not invalidate the notice.  See 
Elizondo v. Medina
, 100 Ill. App. 3d 718, 721 (1981).  In 
Elizondo
, the landlord's 5-day notice required a tender of $900 and the trial court found only $800 was due.  The court found the defendant's tender of $400 when $800 was due an insufficient tender, noting that it is well settled that the defendant must pay the entire amount due to escape the effect of a  5-day notice.  
Elizondo
, 100 Ill. App. 3d at 721.

The defendant next argues that the plaintiff waived its right to possession by agreeing to accept a lesser amount of $700 rather than the $1,371 demanded in the notice.  She further argues that her tender was excused when the plaintiff informed her that it would only accept the full amount mentioned in the notice.

In response, the plaintiff argues that the defendant waived this issue on appeal by not mentioning it in her closing argument.  We disagree.

An argument similar to the instant plaintiff's waiver argument was rejected by this court in 
Cruz v. Stapleton
, 251 Ill. App. 3d 833, 837 (1993).  There, the court found that, given the informality of the trial proceedings and the limited record of a small claims case, the plaintiff did not waive a 
quantum
 
meruit
 theory of recovery where he did not raise it at trial.  
Cruz
, 251 Ill. App. 3d at 837.  Given the limited nature of a forcible entry and detainer action as a summary proceeding (see 
Eckel v. MacNeal
, 256 Ill. App. 3d 292, 296 (1993)) and the detailed and clear evidence presented at trial on the matter, we find 
Cruz
 controlling.  At any rate, the rules of waiver are a limitation on the parties and not this court.  
Eckel
, 256 Ill. App. 3d at 296.

Turning to the merits of the issue, we reject the defendant's argument that the plaintiff waived its right to a forfeiture in connection with an agreement to accept $700 within the 10-day notice period.  Under certain circumstances, a creditor by his conduct may excuse tender of the amount owed.  
Needy v. Sparks
, 74 Ill. App. 3d 914, 918 (1979).  Where a creditor in advance of an offer to pay, or in response to such offer, informs the party under obligation to pay that he will not accept the amount actually due in discharge of the indebtedness, the party under obligation to pay is relieved of the duty of tendering the amount actually due.  
Needy
, 74 Ill. App. 3d at 918.  Here, it is unclear from the parties' agreed statement of facts whether the defendant actually informed Rhodes about the offer to accept $700.  Furthermore, it is not clear that the defendant even communicated to Rhodes that she had $700.  Given the ambiguity in the record on the purported agreement and the lack of evidence indicating that Rhodes would not accept the amount actually due, the trial court was not obligated to accept the defendant's story as to the agreement, nor was it obliged to find that the evidence constituted a waiver of possession by the plaintiff.

Lastly, we note that the defendant argues that the trial court lacked subject matter jurisdiction because the 10-day notice contained inconsistent provisions stating that if the defendant paid the full amount within 10 days her tenancy would not be terminated and later stated that after 10 days the tenancy would be terminated.

The defendant's argument is without merit.  From an examination of the notice it is clear that the notice contains boilerplate provisions for termination based either on nonpayment of rent or conduct amounting to material noncompliance with the lease, with boxes to be checked next to the particular paragraph that applies in this case.  Here, only the box applicable to nonpayment of rent is checked.   Thus, the notice does not contain any inconsistent language.  Accordingly, we find no merit to the defendant's argument.

For the foregoing reasons, we affirm the trial court's order of December 11, 1997, awarding possession of the premises to the plaintiff.  We further affirm the trial court's order of December 17, 1997, awarding the plaintiff $2,270 for past-due rent.

Affirmed.

McLAREN and HUTCHINSON, JJ., concur.