2022 IL App (1st) 210649-U

No. 1-21-0649

Order filed February 16, 2022

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| NORTH ORCHARD PLACE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | No. 20 M1 706086 |
| LINDA HILL; KYMANI HILL; and ALL UNKNOWN OCCUPANTS, | ) | |
| | ) | |
| | ) | |
| Defendants, | ) | Honorable |
| | ) | Preston Jones, Jr. |
| (Kymani Hill, Defendant-Appellee). | ) | Judge presiding. |

JUSTICE BURKE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the circuit court's grant of defendant's motion to dismiss where plaintiff waived the right to terminate his lease after accepting rent with knowledge of the purported lease violation that formed the basis of the eviction lawsuit.

¶ 2    Plaintiff North Orchard Place filed an eviction action against Linda Hill (who had passed away by the time plaintiff filed the lawsuit) and her son, Kymani Hill, after Kymani allegedly

violated a portion of their lease agreement that prohibited criminal activity. However, after the incident where Kymani allegedly violated the lease agreement, plaintiff accepted his rent payment. Because of this acceptance, Kymani filed a motion to dismiss plaintiff's eviction lawsuit and contended that plaintiff's acceptance of his rent payment with knowledge of the purported lease violation waived its right to terminate the lease based on that alleged violation. The circuit court agreed and dismissed plaintiff's lawsuit. On appeal, plaintiff contends that the court erred in dismissing its lawsuit where: (1) a Chicago landlord may accept rent without waiving its right to terminate the lease under the Chicago Residential Landlord and Tenant Ordinance when the termination is for cause and (2) waiver is a question of subjective intent, and there was no evidence that it had the intention to waive the instant eviction case. For the reasons that follow, we affirm the circuit court's dismissal.

¶ 3                                I. BACKGROUND

¶ 4     Although Linda and Kymani had apparently lived in an apartment building in Chicago managed by plaintiff for several years prior, in December 2015, they signed a new lease agreement with plaintiff to rent the apartment. And they continued living in the apartment into 2020. In late July 2020, Linda was hospitalized. Around the same time, Kymani allegedly damaged the vehicle of Kenyae Hooker, the apartment building's property manager, and attempted to injure her by throwing an object at her. Linda was released from the hospital around August 10, 2020, and then passed away on August 17, 2020. On September 12, 2020, an agent of plaintiff delivered to Kymani a notice of termination of tenancy based on him allegedly violating their lease agreement, in particular a section that prohibited "criminal activity," based on the July 2020 incident involving him and Hooker.

¶ 5   On October 2, 2020, plaintiff filed a lawsuit to evict Linda (even though she had passed away) and Kymani from the apartment. Plaintiff based its complaint on the purported July 2020 incident involving Kymani and Hooker that allegedly violated his lease agreement's prohibition on criminal activity. Plaintiff attached to its eviction complaint an incident report written by Hooker, where she asserted that she had Kymani's vehicle towed from the apartment's parking lot. While Hooker was watching a security camera, she observed Kymani throw an object at her vehicle. Hooker confronted Kymani and told him that she would be calling the police. Kymani then picked up an object from the ground and threw it at her. Included with Hooker's incident report were photographs of her vehicle showing damage from Kymani's alleged actions. Plaintiff additionally attached the lease agreement between it, Kymani and Linda as well as the "House Rules," which had been incorporated by reference into the lease agreement. The lease agreement showed that North Orchard Place was a part of a United States Department of Housing and Urban Development housing program.

¶ 6   The following month, Kymani filed a motion to dismiss plaintiff's complaint under section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 2-619(a)(9) (West 2020)), wherein he discussed the timeline of his residence in the apartment and the eviction action pending against him. Kymani stated that he had disabilities and had lived in the apartment for over 20 years with his mother, Linda, who passed away in August 2020. According to Kymani, he worked as a home health care worker for Linda while she was sick. He stated that, upon information and belief, he lived in a federally subsidized apartment and paid a reduced rent based on approximately 30% of his adjusted gross income, which plaintiff had most recently set at $177 while Linda was alive. Kymani asserted that, on August 10, 2020, he and Linda paid their August rent of $177 using a money order from a currency exchange. Kymani further asserted that the currency exchange

"confirmed that the money order was cashed" the following week and that their rent payment had not been returned. Kymani supported all of his assertions with a signed declaration he attached to his motion to dismiss. He also attached a photograph of the money order he and Linda used to pay their rent. The photograph of the money order showed the date of August 10, 2020, as coming from Linda and being paid to plaintiff in the amount of $177. Given the facts, Kymani argued that plaintiff waived its right to evict him by accepting his rent after having knowledge of the alleged grounds for terminating his lease.

¶ 7    In response, plaintiff contended that, when a termination is for cause, a Chicago landlord may accept rent without waiving its right to terminate the lease under the Chicago Residential Landlord and Tenant Ordinance (RLTO) (Chicago Municipal Code § 5-12-010 *et seq.* (amended Mar. 31, 2004)) and that, under the circumstances of the case, whether it waived its right to terminate the lease was a question of fact. In support, plaintiff attached an affidavit from Hooker, wherein she averred that Kymani damaged her vehicle by throwing rocks at it, and he threw a rock approximately the size of a grapefruit at her. Hooker asserted that she contacted the police and made a report about the incident. She added that she had not and would not "waive[] prosecution of this case," and "[t]he criminal case is pending due to a moratorium on warrants issued due to Covid-19 and the judge has ordered a new court date for March 4, 2021."

¶ 8    Additionally, Hooker stated that she learned Linda had been hospitalized in late July 2020 and released from hospitalization on August 10, 2020. According to Hooker, she

"did not wish to be the person to inform [Linda] of the criminal activity and/or property damage caused by [Kymani] to [her] car as [Linda] was hospitalized the day after. Once [Linda] returned home, [Hooker] did not want to burden [Linda]

with the crime committed by her adult son, knowing she had just been released from the hospital."

As a result, Hooker asserted that "[w]e accepted one rent check for $177 from the caretaker after [Linda] was released from the hospital." Hooker also averred that "[w]e have never accepted money from [Kymani] since he caused [the] property damage to [her] car." Additionally, Hooker stated that, following Linda's death on August 17, 2020, "[w]e accepted no more rent."

¶ 9 Kymani filed a reply in support of his motion to dismiss and posited that the RLTO had not usurped the common law waiver doctrine, and therefore, as a matter of law, plaintiff's acceptance of rent after the alleged breach of the lease constituted a waiver of its right to terminate the lease based on the alleged breach.

¶ 10 In February 2021, following a hearing, the circuit court granted Kymani's motion to dismiss. There is no transcript of the hearing or explanation in the court's written order. However, plaintiff subsequently filed a motion to reconsider, where it asserted that the court "ruled, as a matter of law, that the acceptance of money, after an event, bars a landlord from pursuing a[n] eviction case relative to that event." In plaintiff's motion, it posited that the court unreasonably concluded that a waiver occurred as a matter of law because it had not intended to waive its remedies and "was unaware of the act of a potential waiver." The court, however, denied plaintiff's motion to reconsider, and plaintiff appealed.

¶ 11 During the pendency of this appeal, we allowed the Lawyers' Committee for Better Housing, Cabrini Green Legal Aid, Chicago Volunteer Legal Services, Legal Aid Society of Metropolitan Family Services, Shriver Center on Poverty Law and Uptown People's Law Center to file a joint *amicus curiae* brief in support of Kymani.

¶ 12                                    II. ANALYSIS

¶ 13    Plaintiff contends that the circuit court improperly granted Kymani's motion to dismiss where, under the RLTO, a Chicago landlord may accept rent without waiving its right to terminate the lease when the termination is for cause. Plaintiff further argues that, whether it waived its right to terminate the lease, is a question of fact and there had been no evidence presented that it intended to waive its right to terminate the lease.

¶ 14    Kymani brought his motion to dismiss under section 2-619(a) of the Code (735 ILCS 5/2-619(a) (West 2020)). The purpose of such a motion to dismiss "is to dispose of issues of law and easily proved issues of fact at the outset of litigation." *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). A section 2-619 motion to dismiss admits the legal sufficiency of the complaint but asserts that certain defects, defenses, or other affirmative matters appearing outside the pleadings act to defeat the claims. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55. In other words, section 2-619(a)(9) "permits involuntary dismissal where 'the claim asserted against [the] defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim.' " *Valerio v. Moore Landscapes, LLC*, 2021 IL 126139, ¶ 19 (quoting 735 ILCS 5/2-619(a)(9) (West 2018)). "The phrase 'affirmative matter' refers to a defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint." *McIntosh v. Walgreens Boots Alliance, Inc.*, 2019 IL 123626, ¶ 16. In analyzing a section 2-619 motion to dismiss, the circuit court is required to accept all well-pled facts in the complaint as true, as well as any reasonable inferences from those facts. *Id.* All pleadings and supporting documents must be construed in the light most favorable to the nonmoving party. *Sandholm*, 2012 IL 111443, ¶ 55. We review a motion to dismiss *de novo*. *Id.*

¶ 15    In *Midland Management Co. v. Helgason*, 158 Ill. 2d 98, 102 (1994), our supreme court stated that "[i]t has long been established that any act of a landlord which affirms the existence of

a lease and recognizes a tenant as his lessee after the landlord has knowledge of a breach of lease results in the landlord's waiving his right to forfeiture of the lease." To this end, "evidence of acts inconsistent with a declaration of a termination of the lease may prove waiver of the breach, which operates to reinstate the lease." *Id.* One such act is the "[a]cceptance of rent accruing subsequent to a breach." *Id.*; see also *McGill v. Wire Sales Co.*, 175 Ill. App. 3d 56, 60 (1988) ("It is well-settled that a landlord's acceptance of rent accruing after a breach, which is known to the landlord, is an act that results in the landlord waiving his right to a forfeiture.").

¶ 16    In this case, accepting all well-pled facts in plaintiff's complaint as true, as well as any reasonable inferences from those facts, Kymani violated the lease agreement's prohibition on criminal activity in July 2020 when he threw rocks at, and damaged, Hooker's vehicle and threw rocks at Hooker herself. However, according to the signed declaration Kymani filed in connection with his motion to dismiss, on August 10, 2020, he and Linda paid their rent using a money order. Kymani further "confirmed that the money order was cashed" by contacting the currency exchange and averred that the rent payment was never returned to him. None of Kymani's assertions were truly contested by Hooker's affidavit and thus, Kymani's assertions must be accepted as true for purposes of his motion to dismiss. *Rehfield v. Diocese of Joliet*, 2021 IL 125656, ¶ 65 (observing that, in response to a defendant's motion to dismiss that contained as support a "declaration," the plaintiff did not present a counteraffidavit or other proof refuting the defendant's assertions, and thus, those assertions would be deemed admitted). Although in Hooker's affidavit, she averred that plaintiff never accepted money from Kymani after he caused damage to her vehicle, she later stated that plaintiff "accepted one rent check for $177 from the caretaker after [Linda] was released from the hospital." Regardless of whether Kymani directly paid plaintiff or someone else did, "[i]t is immaterial by whom the rent is paid if it is received *as rent* and on behalf of the lessee." (Emphasis

in original.) *Helgason*, 158 Ill. 2d at 102. As such, when viewing the pleadings and supporting documents in the light most favorable to plaintiff, the facts show that it accepted Kymani's rent after having knowledge of his purported lease violation, resulting in plaintiff waiving its right to terminate the lease based on that purported lease violation. See *id.*

¶ 17    Despite this well-settled law on waiver in the eviction context, plaintiff posits that, because the City of Chicago enacted the RLTO to regulate and determine rights, obligations and remedies of residential rental agreements in the city, the RLTO has usurped the common law. And to this end, plaintiff argues that, under section 130 of the RLTO (Chicago Municipal Code § 5-12-130 (amended Nov. 24, 2020)), a Chicago landlord may accept rent without waiving its right to terminate the lease when the termination is for cause. Section 130 of the RTLO provides the remedies that Chicago landlords have in various circumstances. In particular, section 130(a) allows a landlord to terminate a rental agreement if a tenant has failed to pay his rent so long as the landlord provides the tenant a five-day written notice of its intent to terminate the lease. *Id.* § 5-12-130(a). However, the tenant has a one-time right to cure his nonpayment if he pays the full amount of unpaid rent plus the landlord's court filing fees before a judge issues an eviction order for the premises. *Id.* Further, section 130(g) states that, so long as a tenant is not in the process of exercising his one-time cure for the nonpayment of rent, if a landlord "accepts the rent due knowing that there is a default in payment of rent by the tenant," the landlord "thereby waives" its "right to terminate the rental agreement for that breach." *Id.* § 5-12-130(g). In light of section 130(g), plaintiff highlights the statutory construction maxim of *expressio unius est exclusio alterius*, which provides that "the enumeration of an exception in a statute is considered to be an exclusion of all other exceptions." *Schultz v. Performance Lighting, Inc.*, 2013 IL 115738, ¶ 17. To this end, plaintiff posits that the fact there is a waiver clause in the RLTO for a landlord who

accepts rent knowing there is a default in payment of rent but no similar waiver clause for when a landlord accepts rent knowing of another purported lease violation means that a Chicago landlord may accept rent without waiving its right to terminate the lease when the termination is for cause.

¶ 18    However, plaintiff's basic premise that the RLTO has usurped the common law as it relates to waiving the right to terminate a lease after accepting rent knowing of a lease violation is flawed. Section 190 of the RLTO (Chicago Municipal Code § 5-12-190 (amended Nov. 6, 1991)) states that, "[t]o the extent that this chapter provides no right or remedy in a circumstance, the rights and remedies available to landlords and tenants under the laws of the State of Illinois or other local ordinance shall remain applicable." That is to say, merely because a landlord will waive its right to terminate the lease if its accepts rent due knowing there is a default in payment, this does not mean that there is *no* waiver when a landlord accepts rent after knowing of a purported lease violation, as stated in *Helgason*, 158 Ill. 2d at 102. Consequently, the RTLO has not abolished the common law rule that, when a landlord accepts rent after knowing of a purported lease violation, it waives its right to terminate the lease based upon that violation. See *American National Bank by Metroplex, Inc. v. Powell*, 293 Ill. App. 3d 1033, 1045 (1997) (holding that, where the RLTO "fail[ed] to provide tenant rights" on the common law doctrine of the implied warranty of habitability, the doctrine "still exists").

¶ 19    Moreover, as Kymani observes in his brief, section 130(g) was not intended to supersede the common law waiver doctrine generally, but rather to supersede an exception in section 9-209 of the Code (735 ILCS 5/9-209 (West 2020)) that allows landlords who have commenced eviction actions after providing tenants proper notice to collect the past-due rent and still proceed with their eviction lawsuits after accepting that past-due rent. As such, section 130(g) of the RTLO specifically supplanted section 9-209 of the Code and affirmatively provides that, when a landlord

accepts past-due rent, it waives the right to terminate the lease based on the tenant owing past-due rent. As such, section 130(g) of the RLTO was intended to supersede the common law in a very small manner in favor of tenants.

¶ 20    Plaintiff additionally posits that waiver is a question of subjective intent, and there is no evidence that it had a clear intent to waive the instant eviction case. "While the question of waiver may be resolved as a legal matter in certain cases, the question becomes one of fact where the facts necessary to support a finding of waiver are disputed or reasonable minds could draw different inferences from the evidence." *Wolfram Partnership, Ltd. v. LaSalle National Bank*, 328 Ill. App. 3d 207, 225 (2001). For instance, in *Wolfram*, a trust contained a commercial building as property, and the lease of that property allowed for subleases without consent so long as written notice was provided. *Id.* at 210. And in the case, questions of fact existed as to whether the beneficiaries of the trust waived the right to declare a forfeiture of the lease based on the lack of proper notice of subleases where it was disputed whether the beneficiaries knew that written subleases had been executed and "if so, whether they knew or should have known that no notice of those instruments had been tendered pursuant to the terms of the [l]ease." *Id.* at 223-25. On the contrary, in the instant case, the facts necessary to support a finding of waiver are not disputed and reasonable minds cannot draw different inferences from the evidence. This is so because it is undisputed that plaintiff knew that Kymani allegedly violated his lease agreement by engaging in purported criminal activity against Hooker, and it is likewise undisputed that plaintiff accepted the full amount of his rent after acquiring knowledge of Kymani's conduct. Thus, the question of waiver in this case is one of law. See *id.* Moreover, plaintiff's subjective intent is immaterial. " 'If the landlord has by some act recognized the existence of the tenancy subsequent to the time he might have declared the forfeiture, such right of forfeiture is thereby waived' " and "[i]t is not essential that the landlord

should actually have in mind the waiving of the forfeiture." *Avdich v. Kleinert*, 69 Ill. 2d 1, 7 (1977) (quoting *Hopkins v. Levandowski*, 250 Ill. 372, 375-76 (1911)).

¶ 21 In further support of its argument that waiver is a question of subjective intent, plaintiff relies on *Ryder v. Bank of Hickory Hills*, 146 Ill. 2d 98 (1991), *Chicago Transit Authority v. Clear Channel Outdoor, Inc.*, 366 Ill. App. 3d 315 (2006), *In re Liquidation of Inter-American Insurance Company of Illinois*, 329 Ill. App. 3d 606 (2002), *Burnham Management Co. v. Davis*, 302 Ill. App. 3d 263 (1998), *F.D.I.C., ex rel. Ravenswood Bank v. Republic Title Co.*, No. 10 C 6242, 2011 WL 1526817 (N.D. Ill. Apr. 20, 2011) and *Corbett v. DRH Cambridge Homes, Inc.*, No. 04 C 3344, 2005 WL 1838456 (N.D. Ill. July 26, 2005). However, none of these cases except *Burnham* involve waiver in the context of eviction proceedings, as the instant case presents. Therefore, all of the cases except *Burnham* are inapposite.

¶ 22 In *Burnham*, 302 Ill. App. 3d at 266, the defendant's tenancy was subsidized by a federal housing program, and as a result, she was required to pay a portion of her income toward her monthly rent while the balance was paid by the federal housing program. The plaintiff-landlord had the responsibility to annually verify its tenants' income, calculate its tenants' rent and calculate the federal housing program's assistance payments. *Id.* Meanwhile, the defendant was required to report any changes in her income after her landlord performed its annual income recertification, so that her rent could be recalculated in the interim. *Id.* In 1996, the plaintiff filed an eviction action against the defendant, and while the eviction action was pending, the defendant was unemployed so her rent obligation was $0. *Id.* However, later during the pendency of the eviction action, the defendant obtained employment, but she did not report that to the plaintiff until the circuit court had entered judgment in her favor in the eviction action. Regardless, according to the plaintiff's property manager, the plaintiff would not have performed a recalculation of the defendant's rent

while an eviction proceeding was pending because doing so "would have resulted in a waiver of the plaintiff's rights in that case." *Id.* at 267-68. Eventually, the plaintiff brought another eviction case against the defendant, in which it was revealed that the defendant did not report her gain of employment and thus change in income to the plaintiff. *Id.* at 265. The circuit court ultimately entered judgment in favor of the plaintiff in the new eviction case, and the defendant appealed. *Id.* at 268.

¶ 23   On appeal, an issue arose about the plaintiff's reasoning for admitting that it would not have performed a recalculation of the defendant's rent obligation while an eviction proceeding was pending. *Id.* at 270. The appellate court observed that the plaintiff "feared that it would waive its right" to terminate the lease, but rejected such an outcome. *Id.* at 270-71. The court first noted that, in *Helgason*, our supreme court reaffirmed the long-standing principle that " 'any act of a landlord which affirms the existence of a lease and recognizes a tenant as his lessee after the landlord has knowledge of a breach of lease results in the landlord's waiving his right to forfeiture of the lease.' " *Id.* at 271 (quoting *Helgason*, 158 Ill. 2d at 102). However, the appellate court noted that, in *Helgason*, our supreme court held that assistance payments from a federal housing program were not considered " 'rent,' and therefore, a landlord would not waive its rights under the lease by accepting rental assistance from a federal housing program. *Id.* (citing *Helgason*, 158 Ill. 2d at 106). Under this reasoning from *Helgason*, the appellate court concluded that, when a landlord recalculates the rent of a tenant whose rent is subsidized by a federal housing program, that does not constitute a waiver of a breach of lease because the recalculation process "is a necessary step in qualifying for [] assistance payments." *Id.* Because the waiver issue in *Burnham* was different than the issue in the present case, we are not persuaded that *Burnham* compels us to reverse the circuit court's dismissal. This is especially true in light of our supreme court's explicit statement,

which *Burnham* acknowledged, that "any act of a landlord which affirms the existence of a lease and recognizes a tenant as his lessee after the landlord has knowledge of a breach of lease," including the acceptance of rent accruing subsequent to a breach, "results in the landlord's waiving his right to forfeiture of the lease." *Helgason*, 158 Ill. 2d at 102. As such, *Helgason* makes clear that, by accepting Kymani's rent after having knowledge of his purported lease violation, plaintiff waived evicting him based on that purported lease violation.

¶ 24    Lastly, essentially conceding tacitly that its main arguments on appeal are meritless, plaintiff requests a good-faith change in the law in the event we conclude that we are bound by our supreme court's decision in *Helgason*. However, under the doctrine of *stare decisis*, we have no authority to stray from our supreme court's decision in *Helgason*. See *Yakich v. Aulds*, 2019 IL 123667, ¶ 13. Consequently, the circuit court properly granted Kymani's motion to dismiss.

¶ 25                                  III. CONCLUSION

¶ 26    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 27    Affirmed.